(No. 14842.—Reversed and remanded.)

THE BUNGE BROS. COAL COMPANY, Plaintiff in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(WILLIAM F. BAALKE, Defendant in Error.)

*Opinion filed February 21, 1923.*

1. WORKMEN'S COMPENSATION—*when proof does not support an award for permanent total disability.* An award for permanent total disability cannot stand which is not based upon proof of permanent injury and total disability but upon the supposition of physicians that the employee may never recover permanently from the result of the injury because of a venereal disease contracted after the injury and which had prevented recovery.

2. SAME—*award cannot be given for disability due to independent agency developing after accident.* An employee can recover only for a disability that is caused entirely by the accident which he received in his employment, and the employer is not responsible for any part of a disability that has been occasioned by an independent agency that has intervened after the accident occurred.

WRIT OF ERROR to the Circuit Court of Cook county; the Hon. FRANK JOHNSTON, JR., Judge, presiding.

GALLAGHER, KOHLSAAT, RINAKER & WILKINSON, for plaintiff in error.

KERR, McDONALD & MURPHY, (THOMAS MURPHY, and GEORGE A. SCHNEIDER, of counsel,) for defendant in error.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

An award was made by an arbitrator on November 8, 1920, to William F. Baalke, defendant in error, against the Bunge Bros. Coal Company, plaintiff in error, for an injury received by him March 8, 1920, while employed by said coal company, the same being for the sum of $12 per week for 291 weeks and $8 for one week and thereafter a pension for life at $23.33 per month, under paragraph (*f*) of section 8 of the Compensation act. On review by the Industrial Commission additional evidence was taken and the award was confirmed April 6, 1921. A writ of *certiorari* was sued out of the circuit court of Cook county to review the award. The circuit court quashed the writ and confirmed the award, and a writ of error was allowed by this court for a review of the record.

It was stipulated by the parties before the Industrial Commission that on March 8, 1920, the relation of employee and employer existed between them; that defendant in error received an injury on said day which arose out of and in the course of his employment; that plaintiff in error had notice of the accident; that a demand for compensation was made as required by the statute, and that medical services were furnished and that $252 compensation had been paid. It was further stipulated that the only questions in dispute are the extent of the injury caused by the accident and the amount of compensation to which plaintiff in error is entitled. It was further agreed before the arbitrator that $1248 is the average annual earning of employees in the same class as defendant in error who worked for plaintiff in error the year preceding the injury, and that the average weekly wage of such employees is $24.

The testimony of Baalke before the commission in March, 1921, was in substance as follows: He was hurt while driving a coal wagon in Chicago, which was hit by a street car. He was knocked from the wagon and fell about nine or ten feet from his seat. He was treated sev-

eral months at various times by Drs. Wadington, Coulter and Duval. Before this injury he never had a blemish on his back. He hauled coal, moved furniture and pianos, loaded and unloaded coal and articles of furniture, and assisted in carrying pianos into buildings. He cannot lift now, although he has tried it many times, because it causes too much pain, which is in the end of his spine and in the back part of his right hip. The pain is not there at all times but only when he does any lifting, and then he cannot do anything for a few days after. He has tried light work at teaming but cannot do it. There has been no improvement in his condition since he was discharged by the doctors. His condition is just the same now as it was two weeks after his injury, and his injury does not seem to get any better or any worse. He never knew what pain was before the injury. He had rheumatism about seven or eight years ago in his shoulder, but it did not amount to anything. He has had rheumatism since the accident which caused swelling in his joints. He has had a venereal disease since the accident, and he got into such a condition that he could not get on or off of a street car, and about six weeks afterwards he was afflicted with rheumatism. He also had gonorrhea four years ago.

Dr. Coulter testified before the arbitrator, and also before the commission, in substance as follows: He examined Baalke March 26, 1920, and found pain and tenderness over the right sacroiliac joint and in the hip over the exit of the sciatic nerve, which was slight but constant up to the following August. The right hip then showed flection and extension as well as abduction, all normal. Both legs measured the same in circumference ten inches below the anterior spine and from the anterior-superior spine to the internal malleolus. The spine was normal, except a diminished lumbar-crural movement. He had a Goldthwaite belt made and fitted for Baalke and then referred him to Dr. Duval for physio-therapy treatments. Afterwards he saw

him on April 1 and 6, once in May, twice in June and twice in July, 1920. On the 15th of July he found that he had an acute or recent attack of gonorrhea. This attack was only a few days old. He treated him for that condition on July 18, 20, 23, 28 and 31. He saw him again in August following, and on the 12th of that month Baalke had acute gonorrheal arthritis of his left wrist, shoulder and ankle. Those joints were acutely inflamed, red and swollen. He was sent to the Cook County Hospital and received vaccines for gonorrheal arthritis. The doctor gave it as his opinion that the gonorrheal arthritis had no connection whatever with the conditions resulting from the accident or with the injuries sustained by the accident to Baalke. He also stated it as his opinion that Baalke would have been able to have gone to work sooner if he had not contracted gonorrhea; that it was his opinion upon the first examination that he could cure the conditions resulting from the accident, as he had done so in numerous similar cases; that it was his opinion that the condition of the sacroiliac ligaments may be entirely cleared up notwithstanding the gonorrheal arthritis, but that the cure will be delayed from six months to a year; that gonorrheal arthritis is a very hard proposition to cure and that it is likely to recur again and again, and that that might be true in Baalke's case. In his testimony before the commission in March, 1921, he stated that he examined Baalke again on the morning before he testified, and found that he had tenderness of the lower end of the sacrum and in the region of the sciatic nerve, just below its exit from the pelvis, but that he had no tenderness whatever in the right sacroiliac joint. He also then testified that there was a decided improvement in Baalke's condition over the last time he had examined him, and that the tenderness that he found might be the result of gonorrheal arthritis which he had in the sacroiliac joint, or of trauma. He also manipulated his back on that day and agreed with Dr. Duval as to the motions Baalke went through.

Dr. Duval testified before the commission, and he agreed with Dr. Coulter that the gonorrheal arthritis from which Baalke was suffering or had suffered would necessarily aggravate the conditions which resulted from the injury, and that it would also delay the treatment for the injuries resulting from the accident because it would not be advisable to give him massages and electrical treatment for the sacroiliac condition until all traces of the venereal condition had disappeared. Such treatments would necessarily aggravate the conditions caused by gonorrhea, as those conditions require rest and as little disturbance as possible. In his examination of Baalke on that day the patient bent forward,—not in a sufficient degree to touch his toes with his finger tips but he could bring his hands about midway between the knee and the ankle joints. He recovered somewhat slowly. His lateral motions were normal. The stooping over and recovery were somewhat slow. On great pressure he complained of pain in the region of the end of the spine, and about the middle of the gluteus maximus muscle in the buttocks on deep pressure. He concluded from the subjective symptomology and the statements that Baalke made to him that he was still suffering from a strain of the right sacroiliac synchondrosis. Neither physician was able to express any definite opinion as to when he would recover.

The evidence in this case does not establish the fact that defendant in error is permanently injured and totally disabled. The only evidence upon these points is to the effect that his injuries are curable and that his last examination during the hearing before the commission showed very considerable improvement. The proof is also to the effect that he has suffered greatly from gonorrheal arthritis, and that the inflammation and swelling of the joints was occasioned by a new and independent cause which occurred weeks after he received his injury. This latter condition has, according to the evidence, necessarily postponed his recovery from his accidental injuries at least six months or a year, and the

physicians were not able to tell definitely whether his con-
dition when last examined was the result of his injury by
the accident or of the gonorrheal arthritis or of both causes.
It does appear that the commission has awarded him com-
pensation for total disability based upon the supposition of
the physicians that he may never recover permanently from
the result of both conditions. The burden of proof was
on the defendant in error to establish the fact that his in-
juries caused permanent and total disability before he could
recover compensation for total disability, and he has failed
to make such proof. The authorities in this country, so
far as we have been able to examine them, are to the
effect that an employee can only recover for a disability
that is caused entirely by the accident which he received in
his employment, and that the employer is not responsible
for any part of a disability that has been occasioned by an-
other independent agency that has intervened after the ac-
cident occurred. (*McCoy* v. *Michigan Screw Co.* 180 Mich.
454; *Kill* v. *Industrial Com.* 160 Wis. 549; *Pacific Coast
Casualty Co.* v. *Pillsbury,* 171 Cal. 319.) This court has
in substance made the same ruling in the case of *Bailey* v.
*Industrial Com.* 286 Ill. 623; and it was there decided that
whether the accident was an independent intervening cause
of the injury is a question of fact to be passed upon by the
Industrial Commission. If the commission passed definitely
on that question it does not so appear from this record. At
any rate the evidence does not sustain the award for total
disability for the reasons aforesaid.

The judgment of the circuit court is reversed and the
cause is remanded, with directions to set aside the award
and to remand it to the commission for a further hearing
upon the question as to what amount the defendant in er-
ror is entitled to recover in the case in the way of compen-
sation for disability resulting solely and only from his ac-
cidental injuries arising out of his employment.

*Reversed and remanded, with directions.*