[Civ. No. 11164.   First Appellate District, Division One.—December 29, 1939.]

HENRY LYYDIKAINEN, Petitioner, v. INDUSTRIAL AC-CIDENT COMMISSION et al., Respondents.

Alfred C. Skaife for Petitioner.

Everett A. Corten and Eldon B. Spofford for Respondents.

GOODELL, J., *pro tem.*—The petitioner, while working as a longshoreman for respondent Matson Terminals, Incorporated, suffered an injury to his right knee and applied for compensation, on which application, and at the hearing thereon, he was represented by an attorney whose name and address appeared on the record. The proceeding resulted in an award of $15.44 per week for temporary total disability and there was no application for rehearing or review. On January 21, 1939, almost fourteen months after the award, the respondent employer, a self-insurer, filed its petition requesting that liability for temporary disability indemnity be terminated and that the award be amended for permanent disability rating. A copy of this petition, together with a copy of the medical report, was mailed to petitioner personally, *and not to his attorney of record.* On January 26, 1939, the commission signed a notice of intention to amend for permanent disability rating, and on the same day a copy thereof was mailed to petitioner personally, *and not to his attorney of record.* The notice fixed no time for hearing. It said that liability would be terminated or the award amended for permanent disability rating on the record as it then stood, ten days after service of the notice, unless good cause was shown to the contrary in writing. This notice was misplaced and did not come to petitioner's

attention until after the expiration of the ten-day period. Nothing was done on petitioner's behalf after he received the notice, as far as the record shows. On March 27, 1939, the commission made an order amending its findings and award for permanent disability, therein determining that petitioner's temporary disability had terminated on January 13, 1939, that his permanent disability was 16¼ per cent, and that the amount already paid for temporary disability, $1513.12, exceeded the amount due for permanent disability. Accordingly petitioner was awarded nothing either by way of pecuniary compensation or medical treatment. This order recited that notice had been served upon the parties "and there having been no response thereto within the allotted period of 10 days from and after January 26, 1939". Within twenty days thereafter petitioner filed a petition for rehearing in which he pointed out, among other things, that the notice of intention to amend for permanent disability had been placed in the wrong letterbox in his hotel, to which it had been addressed, and that it had not come to his attention until after the ten-day period had expired, too late to file medical reports within that period. With this petition the applicant submitted the reports of two doctors, both of whom disagreed with the medical report upon which the commission had acted. On this petition, Jarl Lindfors, the consul of Finland at San Francisco, appeared for the petitioner, signing as petitioner's agent. The respondent employer filed an answer to the petition wherein it pointed out, among other things, *that petitioner had appeared in the proceeding by an attorney and could have availed himself of the services of his attorney* in answering the petition for termination of temporary disability and for permanent disability rating. On May 12, 1939, the petition for rehearing was denied.

■ Several points are presented in this pending proceeding. The petitioner contends that, because of the fact that he had an attorney of record before the commission, the copy of the petition and the notice of intention should have been sent to such attorney, and not to himself, and that, as this was not done, he did not get the due and legal notice to which he was entitled; that, for this reason, he was deprived of the opportunity to oppose the employer's petition or make any timely or adequate showing on his own be-

half. The change in rating was, of course, of the utmost importance to petitioner. That he was entitled to notice is conceded, but it is claimed by the respondent commission that the notice he got was sufficient. The commission admits that ordinarily the notice would have been mailed to petitioner's attorney, and the only explanation given is that on the folder in the compensation department the name and address of the attorney had been "penciled out". When, why or by whom this was done, or on whose authority, does not appear. The question presented is whether the mailing of these papers to the petitioner himself, instead of to his attorney, constituted legal notice to him.

Section 5316 of the Labor Code reads as follows: "Any notice, order, or decision required by this division to be served upon any person either before, during, or after the institution of any proceeding before the commission, may be served in the manner provided by Chapter V, Title XIV of Part II of the Code of Civil Procedure, unless otherwise directed by the commission or a commissioner. In the latter event the document shall be served in accordance with the order or direction of the commission or a commissioner. . . . " Said chapter V embraces sections 1010 to 1020 inclusive. Section 1015 is headed: "Service upon nonresident defendant." Its first sentence reads: "When a plaintiff or a defendant, who has appeared, resides out of the State, and has no attorney in the action or proceeding, the service may be made on the clerk or on the justice where there is no clerk, for him." The section then proceeds: *"But in all cases where a party has an attorney in the action or proceeding, the service of papers, when required, must be upon the attorney instead of the party,* except service of subpoenas, of writs, and other process issued in the suit, and of papers to bring him into contempt. . . . " (Emphasis ours.) Because of the heading: "Service upon nonresident defendant" it would seem at first blush that section 1015 might not be of general application. The decisions, however, have always treated this section (except the first sentence thereof which, clearly, applies only to nonresidents) as applicable to all litigants, resident and nonresident alike. (*Estate of Nelson,* 128 Cal. 242 [60 Pac. 772]; *Farrar* v. *Steenbergh,* 173 Cal. 94 [159 Pac. 707]; *Finch* v. *McVean,* 6 Cal. App. 272 [91 Pac.

1019]; *Wood* v. *Johnston,* 8 Cal. App. 258 [96 Pac. 508];
*Ritter* v. *Braash,* 11 Cal. App. 258 [104 Pac. 592].) There
are other cases as well which so treat it. Counsel for re-
spondents concede that the section has that general and
unlimited scope and meaning. What bearing, then, has
section 1015 upon this case? In *Estate of Nelson, supra,*
p. 243, the court, in discussing a notice of appeal, says
that the provision of section 940, Code of Civil Procedure
"that the notice shall be served upon 'the adverse party
or his attorney' is to be read in connection with section
1015 of the Code of Civil Procedure that 'in all cases where
a party has an attorney in the action or proceeding, the
service of papers when required must be upon the attorney
instead of the party' ". The opinion says "the statute
provides that the party can receive the information *only
through a service of the notice upon his attorney".* (Em-
phasis ours.) In *Rose* v. *Mesmer,* 134 Cal. 459 [66 Pac.
594], one of the litigants had been served with notice of
appeal, and it was claimed that that personal service started
the time running for the filing of the undertaking on ap-
peal. If so, the undertaking was in time. But this liti-
gant had appeared by attorneys, who had been served some
days before. The court held that the service upon the at-
torneys, and not upon the litigant, started the time run-
ning, saying: "the later service upon him, in person, upon
August 15th, was a mere nullity, and could not avail to
postpone the time. . . . "

The respondent commission contends that in this case
there was a compliance with its rule VIII, in that the mail-
ing was *"to the party affected".* That rule provides, in
part as follows: "1. Service of the original process of the
Commission, consisting of a copy of the application with
notice of time and place of hearing thereof, and service of
any order, decision, award or notice issued by the Commis-
sion, will regularly be made by the Commission by mail-
ing such process, order or notice to the party affected, *in
the manner prescribed hereafter,* . . . 2 . . . *Where ser-
vice is made by mailing, it shall be made substantially in
accordance with the provisions of Chapter V, Title XIV of
Part II of the Code of Civil Procedure,* . . . " (Emphasis
ours.) This rule is consonant with section 5316 of the La-
bor Code. Both refer to said chapter V, and the rule dis-
tinctly says that where the notice is mailed it shall be done

in accordance with that chapter. The words "to the party affected" must be read in connection with section 1015. In other words, the language must be interpreted as if it literally read "to the [*attorney for the*] party affected" in all cases where the party has an attorney. Such, clearly, is the holding of *Estate of Nelson, supra,* and such, also, is the meaning of *Rose* v. *Mesmer, supra.* Both section 5316 and rule VIII were adopted after those decisions, and it must be presumed that they were drafted in the light of that settled judicial interpretation.

Any doubt that the words "the party affected" found in rule VIII mean his attorney, if he has one, is removed by other cases in this state already cited. Section 442 of the Code of Civil Procedure provides that a cross-complaint must be served upon "the parties affected thereby". In certain litigation in California the cross-complaint was served upon the attorneys of record for the plaintiff. The cross-complainant prevailed, and later sued in Texas on his judgment. The courts of that state denied full faith and credit to the California judgment, claiming that there must be service on the party himself and that service on his attorney was insufficient. The case found its way to the Supreme Court of the United States (*Adam* v. *Saenger,* 303 U. S. 59 [58 Sup. Ct. 454, 82 L. Ed. 649]), and that court followed California's, and not Texas', construction of the California statutes, read our sections 442, 1011 and 1015 together, and followed the holdings in *Farrar* v. *Steenbergh, supra; Wood* v. *Johnston, supra,* and *Ritter* v. *Braash, supra,* on the precise point now under discussion. In our opinion section 5316 clearly requires service upon the attorney, when there is one, and rule VIII does likewise.

The commission argues that this mailing was a mere irregularity and that "mere irregularity of procedure does not vitiate the acts of the commission, or render its decisions subject to annulment". The four cases relied upon are not in point, for none of them involves an *absence of notice.* In *Massachusetts etc. Co.* v. *Industrial Acc. Com.,* 176 Cal. 488 [168 Pac. 1050], the notice, which was received, was apparently in the same form as that mailed in the instant case. Because it "did not state the time for hearing, but merely declared that the proposed amendment would be made unless good cause to the contrary was shown in writing within ten days", it was contended that there

was no jurisdiction to make the award. The court held that this method did not contravene the provisions of the act. In *Frankfort etc. Co.* v. *Pillsbury,* 173 Cal. 56 [159 Pac. 150], the referee refused to permit certain questions to be answered on cross-examination. The court held this to be a mere error in the taking of testimony; that the commission was not bound by the technical rules of evidence, and that "The grounds of review . . . do not include matters like the one under discussion." In *Walsh* v. *Industrial Acc. Com.,* 1 Cal. (2d) 747 [36 Pac. (2d) 1072], the court conceded that the referee acted improperly in reaching his decision upon a medical report without giving petitioners an opportunity to controvert it, but held this to be a mere error in procedure. *In re Hughes,* 159 Cal. 360 [113 Pac. 684], was a *habeas corpus* proceeding where the court held simply that procedural defects, where jurisdiction exists, are merely errors of law not fatal to the jurisdiction.

After conceding that section 1015 is general in its application counsel for the commission say: "If a court action were herein involved, that might dispose of the question." It was, however, settled at an early date that "the commission in matters within its jurisdiction acts as a judicial body and exercises judicial functions and in legal effect is a court." (*Bankers Indemnity Ins. Co.* v. *Industrial Acc. Com.,* 4 Cal. (2d) 89, 97 [47 Pac. (2d) 719], citing 27 Cal. Jur. 449, *Carstens* v. *Pillsbury,* 172 Cal. 572, 576 [158 Pac. 218], *Pacific Coast Casualty Co.* v. *Pillsbury,* 171 Cal. 319, 322 [153 Pac. 24], and *Western Metal Supply Co.* v. *Pillsbury,* 172 Cal. 407, 411 [156 Pac. 491, Ann. Cas. 1917E, 390].) The vital importance of notice is stressed throughout the opinion in *Carstens* v. *Pillsbury, supra,* p. 577, wherein, *inter alia,* it is said that "The right to be present at any hearing necessarily includes the right to have notice of such hearing *in time to attend*". (Emphasis ours.) Again, the court says (p. 577) : " . . . the commission, upon such hearings, must find facts and declare and enforce rights and liabilities,—in short, it acts as a court, and it must observe the mandate of the constitution of the United States that this cannot be done except after due process of law." (See, also, *Union Lumber Co.* v. *Industrial Acc. Com.,* 124 Cal. App. 584 [12 Pac. (2d) 1047].) In *Larsen*

v. *Industrial Acc. Com.*, 125 Cal. App. 13 [13 Pac. (2d) 850], it was held that an order made without notice was void. In that case it was claimed that the granting of a petition for rehearing cured the error in the making of the order without notice, but the court held otherwise.

■ It is claimed that petitioner "waived any defect of notice by appearing and filing a subsequent petition for rehearing". On the petition for rehearing petitioner was not represented by an attorney at law but by the consul for Finland, who appeared as petitioner's agent. In the petition the showing was made that the notice had been delayed in reaching petitioner. A *bona fide*, if not a strictly legalistic, showing, designed to excuse failure to come in within the ten days, was made. It cannot very well be held to be a waiver when a petitioner thus seeks to bring before the commission the reason why he has not appeared sooner. To hold that there was a waiver would mean that the petitioner had voluntarily relinquished his right to object to the failure to give him legal notice, and there is nothing in his petition to suggest this.

For the reasons herein given we are satisfied that the notice required by law was not given to the petitioner in the proceedings now under review. That view renders it unnecessary to discuss other points urged by the petitioner.

The award is annulled.

Peters, P. J., and Ward, J., concurred.