Leech, Appellant, v. Builders Supply Company et al.

544

Argued May 1, 1931.

Before Trexler, P. J., Keller, Linn, Gawthrop, Cunningham, Baldrige and Drew, JJ.

*A. L. Goldstrom,* for appellant.

*Murray J. Jordan,* and with him *Fred J. Jordan,* for appellee.

Opinion by Baldrige, J., July 8, 1931:
The claimant suffered an accident on January 26,

1915, while in the employ of the John Serena Company, which necessitated an amputation of his foot and a portion of his left leg below the knee. He remained in the employ of that company until October 1, 1925, when its property was sold to the Builders Supply Company, Inc., defendant in this case. He continued his work as a teamster until April 10, 1928, when he sustained an injury at or near his knee cap. On May 9, 1928, the insurance carrier executed a compensation agreement, in which it was agreed that the claimant would be compensated at the rate of $15 per week for an indefinite period. On February 10, 1930, the insurance carrier filed a termination petition, alleging that the claimant's left leg was amputated above the knee and that compensation had been paid him for a period of 80 weeks. The referee modified the agreement so as to provide compensation for 215 weeks, under Section 306 of the Workmen's Compensation Act of 1915, P. L. 736, which provides: "......amputation between the knee and ankle shall be considered as the equivalent of the loss of a foot.......amputation at or above the knee shall be considered as the loss of a leg." Thereupon, the defendant took an appeal to the compensation board. The board modified the agreement so as to charge the defendant with compensation for 65 weeks only, which is the difference between 150 weeks for the loss of a foot and 215 weeks for the loss of a leg. The court of common pleas sustained the board and this appeal followed. The first injury occurred prior to our Workmen's Compensation Act, but if it had been subsequent thereto, the claimant would have been entitled to compensation. If he, at the time of his employment by the defendant, had had two whole legs, and had been injured, so that it was necessary to amputate below the knee, and had received compensation therefor, it could hardly be contended that if he received a second injury, which necessitated an amputation above the knee, he would be en-

titled to as much compensation for the second injury as though he had received no previous compensation for the loss of his foot.

In the case of Quinn v. American I. Shipbuilding Corp., 77 Pa. Superior Ct. 304, the claimant, through an accident, practically lost the sight of an eye. About twenty years later a piece of steel became imbedded in the same eye, as a result of which the eyeball was removed. This court sustained the refusal of an award. In the course of that opinion, President Judge TREX-LER, said, "It would therefore seem to follow that if the use of an organ had already been lost, the claimant could not recover such compensation a second time by reason of the subsequent physical loss of the organ itself."

In Lente v. Luci, 275 Pa. 217, the claimant had lost an eye in the course of his employment. The sight of his other eye had been destroyed prior thereto. The court held that "he may not have compensation in another case for the loss of that member; and if we now compensate him for total disability, he would be getting a preference over his neighbor who might have lost both eyes in the same accident."

The appellant called our especial attention to American Mut. Liability Ins. Co. v. Brock, decided by the court of appeals in 135 S. E. 103. The claimant in his boyhood had lost his right foot and part of his leg to within three inches of the knee. He sustained an injury, in the course of his employment, to the remaining portion of his leg. The court held that he was entitled to compensation for such a partial loss at the rate of fifty per cent of the amount he would have received for the loss of a leg or for the loss of the use of a leg, irrespective of the previous disability. That case is not controlling for two very good reasons. The first is, that the Georgia statute is dissimilar in its terms from ours, and the second is, that the Supreme Court of Georgia reversed that case (see 142 S. E.

101). It is interesting to note, however, that the opinion writer expressed the following view: "To hold that the defendant in error may be treated as if he were a two-legged man in determining the value of the loss of use of a portion of a leg would be to leave out of consideration and completely obliterate the fact that he had been somewhat injured in a previous accident for which the employer was not responsible." As Mr. Justice KEPHART points out in Lente v. Luci, supra, "If we hold that, by loss of the other arm, leg or eye, their employer is bound to compensate them for total disability, representing a difference between $5,000 and $2,000, it surely will follow these men will lose their employment. No one will employ such a man when another, without handicap, equally as good, can be secured."

If we would accept the theory of the appellant, he could now recover for the loss of a leg, which includes the foot. But when he was employed by the defendant, he did not have a left foot and he is not entitled, therefore, to receive compensation for the loss of something which he did not possess. We agree with the board and the learned court below that this employer is liable for the loss of a leg, less the number of weeks prescribed for the loss of a foot; otherwise, there would be an overlapping award, which was never contemplated by the statute.

Judgment is affirmed.