ALASKA PACKERS ASS'N v. ALASKA INDUSTRIAL
BOARD et al.
No. 6087–A.

United States District Court. D. Alaska.
First Division. Juneau.
Aug. 15, 1949.

466

Faulkner, Banfield & Boochever, Juneau, Alaska, for plaintiff.

J. Gerald Williams, Juneau, Alaska, for Alaska Industrial Board.

William L. Paul, Jr., Juneau, Alaska, for Peter Martin.

FOLTA, District Judge.

Plaintiff challenges the validity of the order of the Alaska Industrial Board made March 31, 1949, awarding the defendant Peter Martin $4,050.00 for the loss of a leg and ordering that an attorney fee of $750.00 be paid in addition thereto.

The questions presented are: (1) whether there is any evidence to support the finding of the Board that the claimant lost his left leg as a result of a compensable injury; (2) whether in any event the claimant was entitled to com-

pensation for the loss of his left leg without deducting therefrom the amount payable for a loss of a part of the foot suffered as a result of a noncompensable injury previously sustained; and (3) whether attorney fees are allowable in addition to or must be paid from compensation awarded.

Defendant Peter Martin's left foot was amputated at the metatarsal joint in 1911 before the enactment of Alaska's first compensation act, in spite of which it appears that he had not been seriously handicapped in pursuing his usual vocations of trapping, hunting and fishing, or engaging in activities requiring considerable use of the foot. During the commercial fishing season of 1948 he was employed as a fisherman by plaintiff. At the hearing before the Board he testified that on the 18th or 19th of July, in pulling his skiff across muddy tideflats, presumably to launch it, he pulled it upon his left foot and, in extricating it, chafed or bruised it; that he treated it himself during the ensuing days, but on the 22nd, becoming aware of more pain and noticing that the skin over the bone at the point of the amputation was split, he consulted the employer's doctor that evening who treated it until the close of the fishing season a week or so later, but that notwithstanding, osteomyelitis developed, and that after his return to Juneau and further treatment by a physician of his own choice, it was found necessary to amputate his leg between the ankle and the knee.

Plaintiff contends that the evidence shows that osteomyelitis resulted not from any trauma but from working the long hours which it is customary for fishermen to work during the brief period of the salmon run, and from the use of a prosthetic device which subjected his foot to constant pressure and irritation, which condition was further aggravated by the necessity of lifting and twisting his foot in the boot in freeing it from the tidal mud of Bristol Bay, in connection with beaching and launching his skiff incident to fishing operations.

The defendant did not at any time tell the employer's or his own physician anything about the skiff incident.

The Board found that: 7. "The evidence is not certain as to whether the applicant received repeated and minor yet substantial trauma to the bone of his left foot, which was near the surface of the skin, commencing with June 27, 1948, or whether about July 22, 1948, the applicant, while pushing his set net skiff in the mud, dropped the skiff down on top of his left foot, which drop, together with the unusual efforts to free the foot, resulted in the injury. However, either of those trauma were sufficient to have caused osteomyelitis and cracking of the skin and exposure of the bone."

■■■ The Board's characterization of the chafing or irritation to which defendant's foot was normally subjected while engaged in fishing as trauma would seem to be an unwarranted enlargement of the meaning of the term. Moreover, that part of the finding relating to the dropping of the skiff on his foot is unsupported by any evidence and, hence, in both respects the finding is too broad. However, defendant's testimony, despite discrepancies, inconsistencies and contradictions, is to the effect that he pulled the skiff upon his foot which was in the mud and, that in extricating it, it was chafed or bruised; that several days later the skin over the end of the foot became cracked, and there was pain. Doctor Carter, defendant's own physician who treated him for the osteomyelitis and subsequently amputated the leg, testified that osteomyelitis could have been caused by a bruise on the 20th of July, but that it was more probable that it resulted from other causes. Whether osteomyelitis followed from the bruise itself or whether the bruise aggravated an existing condition is of course immaterial. Harbor Marine Contracting Co. v. Lowe, 2 Cir., 152 F.2d 845-846. Narrowing the Board's finding to conform to the evidence, it would appear that the evidence supports a finding to the effect that the defendant bruised or

injured his foot in extricating it from beneath the skiff and that this developed into osteomyelitis. It follows that the finding thus narrowed is supported by evidence and, when this appears, the finding under the provisions of Section 22 of the Act, A.C.L.A. 1949, § 43-3-22, and the decisions, Contractors v. Pillsbury, 9 Cir., 150 F.2d 310; Marshall v. Pletz, 317 U.S. 383, 388, 63 S.Ct. 284, 87 L.Ed. 348, is conclusive even though the evidence is conflicting or susceptible of contrary conclusions, Norton v. Warner Co., 321 U.S. 565, 568, 64 S.Ct. 747, 88 L.Ed. 430, and doubt in any event must be resolved in favor of the employee.

▆ Plaintiff asserts that the defendant's testimony relating to the skiff incident was an afterthought advanced for the purpose of bringing himself within the provisions of the Act, and in support thereof points to the fact that the claimant said nothing about the skiff until he applied for compensation on December 8, 1948. This charge may be true and perhaps the Board should have disbelieved the claimant's testimony in that particular but, since the Board chose to believe it, the question of claimant's credibility is not open to review in this proceeding. Wilson Co. v. Locke, 2 Cir., 50 F.2d 81. And it appears that the Board may disregard the opinion of medical experts, Contractors v. Pillsbury, supra.

Plaintiff further contends that the Board erred in allowing the claimant compensation for the loss of a leg because he had long before his employment lost his left foot and, that hence, the amount of compensation allowable for the loss of a foot should have been deducted; and that the Board erred in ordering that the attorney fee be paid in addition to, instead of out of, the award.

The Act, A.C.L.A. 1949, § 43-3-1, provides for the payment of $2700.00 for the loss of a leg and further provides that an amputation between the knee and ankle shall be deemed equivalent to the loss of a leg. And while it also specifically provides that in case of any injury which, in

conjunction with a previous injury or disability, results in permanent total disability, compensation shall be paid by the employer for permanent partial disability only and that the remainder shall be paid out of the second injury fund established by the Act, it makes no provision for a division of compensation where the subsequent injury, although resulting in permanent loss of such member, does not result in total permanent disability of the person himself.

█ ] The only case in which a like situation came before a court appears to be that of Leech v. Builders' Supply Co., 102 Pa.Super. 543, 157 A. 629, in which it was held that deduction of the amount payable for the loss of a foot should have been made from the amount payable for the loss of the leg subsequently sustained. I am inclined to the opinion, however, that this rule should be applied only to prevent the pyramiding of claims and that the case is controlled by Killisnoo Packing Co. v. Scott, 9 Cir., 14 F.2d 86, 5 Alaska Fed. 310. It is true that in the case last cited, the question dealt with was whether the subsequent loss of the remaining eye resulted in permanent total disability but, if a leg be considered by itself, it would appear that the total loss thereof bears a close enough analogy to the total loss of vision to warrant the conclusion that, where the loss of a leg is total in the statutory sense and the question of the pyramiding of claims is not involved, the employee is entitled to the compensation fixed for the loss of a leg. It should also be noted that in Killisnoo Packing Co. v. Scott the statute made no provision for a second injury fund and, hence, in that particular the situation was similar to the one here under consideration and would appear to be governed by the doctrine of that case. Moreover in providing payment for the loss of a leg the statute does not require that it be shown that the leg was whole before the injury and, where, as here, the testimony shows that the claimant was able to engage in various occupations involving strenuous physical exertion and that no question of cumulative claims is presented, an exception should not

be read into the statute even though an exception of that kind is implicit where the previous injury was compensable.

The remaining question is whether attorney fees should be paid out of or added to the compensation awarded. Section 23 of the Act provides that: "The fees of attorneys and physicians, and the charges of nurses and hospitals, for services under this Act shall be subject to the approval of the Industrial Board. When any claimant for compensation is represented by an attorney in the prosecution of his or her claim, the Industrial Board shall fix and state in the award, if compensation be awarded, the amount of the claimant's attorney's fees. The fee so fixed shall be binding upon both the claimant and his or her attorney, and the employer shall pay to the attorney out of the award, the fee so fixed, and the receipt of the attorney herefor shall fully acquit the employer for an equal portion of the award. The Industrial Board may withhold the approval of the fees of the attending physician in any case until he shall file a report with the Industrial Board on the form prescribed by such Board." A.C.L.A. 1949, § 43-3-23.

Plaintiff contends that the clause "and the employer shall pay * * * out of the award" clearly requires that the fee shall be paid out of the amount awarded as compensation, whereas defendant contends that the term "award" is used in a comprehensive sense to denote the total amount allowed by way of compensation and fees for hospital, medical, surgical, and nursing services, for which the employer is expressly liable under Section 2, A.C.L.A. 1949, § 43-3-2.

An examination of the Act discloses that the term in question is not used throughout with entire consistency. Thus, it is used in the sense of a decision or order of the Board as well as in the sense of compensation awarded and, although the act makes the employer expressly liable additionally for medical and related services, there is no

like provision governing liability for attorney fees. It would therefore appear that the meaning of the term "award" in the clause quoted must be determined in the light of its context. Obviously, the term "award", out of which the attorney fee is to be paid, is not used in the sense of an order or decision because subtraction of the amount allowed for attorney fees could not be made from an order or decision. It must, therefore, be deemed to have been used in the sense of compensation, expressed in dollars and cents, and it is likewise clear that, if the fee is to be paid out of the award, it was intended that it should be paid out of the compensation part of the award rather than out of the total amount awarded, for it would be idle to require the addition of the amount allowed for hospital and related services before subtracting the amount allowed for attorney fees. Accordingly, I am of the opinion that the clause referred to requires that the attorney fees shall be paid out of the amount awarded as compensation.

The order of the Industrial Board is accordingly modified and, as modified, is affirmed.