Vance **KENNEDY**, Plaintiff,

v.

ALASKA INDUSTRIAL BOARD, Defendant,

Columbia Lumber Co. of Alaska, and Timber, Inc., Intervenors.

No. 7228–A.

District Court, Alaska
First Division, Juneau.

Feb. 17, 1956.

---

M. E. Monagle, Henry Roden, Juneau, Alaska, for plaintiff.

R. Boochever, of Faulkner, Banfield & Boochever, Juneau, Alaska, for intervenor Columbia Lumber Co. of Alaska.

John H. Dimond, Juneau, Alaska, for intervenor Timber, Inc.

HODGE, District Judge.

Plaintiff has appealed from a decision of the Alaska Industrial Board denying him compensation for claimed injuries suffered in the course of his employment by Columbia Lumber Co. of Alaska and Timber, Inc., under the provisions of the Workmen's Compensation Act of Alaska, which provides for liability of an employer to pay compensation to any employee

> "who receives a personal injury arising out of and in the course of his or

her employment". Sec. 43–3–1, A.C.L.A.1949.

Sec. 38 of the same Act, Sec. 43–3–38, A.C.L.A.1949, further defines the word "injury" or "personal injury" as meaning "an injury by accident arising out of and in the course of employment".

Separate claims were filed by plaintiff under the provisions of the Act which were consolidated, and a full hearing had before the Board with considerable medical and other testimony produced. The Board's findings were in substance as follows:

(1) In November, 1949, while employed by the Koenig Lumber Co. of San Francisco, applicant fell about ten feet from a broken ladder, landing on his right low back on concrete. He was given medical attention after stopping work, resulting in a diagnosis of discogenic disease with minimal nerve root symptoms caused by the accident. X-rays taken showed no evidence of traumatic bone pathology but the lumbosacral disc space was found to be narrowed slightly, a small spur appeared on the fifth lumbar vertebra, and there was a minimal rotoscoliosis of the spine. A laminectomy was performed on June 30, 1950, and the applicant discharged with a no disability rating.

(2) On June 8, 1951, while employed as yard superintendent for the Columbia Lumber Co. of Alaska at Whittier, a carrier load of shiplap fell on applicant causing him to fall and resulting in back pain and inability to move for several hours. He was treated by an army doctor for "back strain" but no X-rays were taken. Thereafter he was transferred to the Company plant at Sitka where he was treated by Dr. William C. Charteris, and remained in the employ of such Company until March 1, 1952, apparently continuing to perform his full duties.

(3) In March, 1952, applicant was employed by Westfall Logging Co. of Sitka at Fish Bay as a limber, which employment lasted less than an hour as the swinging of an axe the first time resulted in severe back pain.

(4) In April, 1952, while at Homer, applicant suffered pain in his back while riding in an automobile, but was able to get around the following day.

(5) On April 14, 1952, while employed by Sullens and Hoss (Timber, Inc.) at Rocky Bay, applicant and another man were lifting a part of a planer weighing approximately four hundred pounds when he "felt something snap in his low back." On April 15, while attempting to assist some workmen he took hold of the end of a railroad jack handle which came up suddenly and jarred his spine resulting in severe pain. Returning to Anchorage the night of April 15, he was treated by Dr. Karl Pelka whose diagnosis was "unstable lumbosacral spine with chronic strain secondary to accident of November 22, 1949." X-rays taken on April 16, 1952, showed "marked thinning or narrowing of the lumbosacral intervertebral disc space."

(6) Later, applicant was transferred to Fairbanks where a spinal fusion was done by Dr. Paul Haagland in October, 1952. Later examinations and medical history were outlined by the Board, which found that applicant is now and has been since April 15, 1952, totally disabled, which the Board found to be permanent.

The findings of the Board conclude with the following language:

"We find further that the incidents of injury and strain while employed by Columbia Lumber Co. at Whittier and by Sullens and Hoss at Rocky Bay as evidence of a disability which resulted from the original and precipitating injury of November, 1949."

Based upon these findings the Board found that the employer at the time of the injury in November, 1949, was not subject to the jurisdiction of the Board, and that no award could be issued.

Sec. 22 of the Act, Sec. 43–3–22, A.C.L.A.1949, specifically provides that

"An award by the full Board shall be conclusive and binding as to all questions of fact".

Under this provision and similar provisions in other compensation acts it has been repeatedly held that upon review of the entire record if the findings of the Board are supported by substantial evidence, such findings are binding upon the Court. Board of National Missions of Presbyterian Church in United States of America v. Alaska Industrial Board, 116 F.Supp. 625, 14 Alaska 453; Alaska Packers Association v. Alaska Industrial Board, 12 Alaska 465; Oxford v. Carson Const. Co., 9 Cir., 226 F.2d 174; Massachusetts Bonding & Ins. Co. v. Industrial Accident Commission, 36 Cal.App.2d 96, 96 P.2d 1009.

Although not conceding this point, it is the contention of the plaintiff that the facts found by the Board do not support its decision and for that reason the latter should be set aside.

Two questions are therefore presented for decision: (1) Were the findings of the Board supported by substantial evidence? (2) If so, was the decision or conclusion of the Board correct as a matter of law?

■ Without reviewing the testimony in detail the conclusion is inescapable that the findings of the Board were supported by substantial evidence, especially the reports of Dr. Philip H. Moore, an eminent orthopedic surgeon, and Dr. J. W. Gibson, the former stating in part:

"The alleged injury in California instigated the chain of events outlined above. His operation probably consisted of the removal of a fragment of the disc. * * * This did not materially change the development of the picture and he was again operated upon with the addition of an attempt to fuse the posterior elements of the vertebral structures. * * * Continuing with his pain and disability, he was operated upon a third time and apparently an attempt was made to explore the neural foramen and to refuse him. Again this did not change the picture, materially, since the disc had not been entirely removed.

There was no fusion between the bodies of the vertebrae and pain persisted. * * *"

After outlining the present symptoms of the injury suffered by claimant, Dr. Moore continued as follows:

"These are the classical symptoms of pressure and/or irritation of the fifth, right lumbar nerve. This is essentially the same symptoms he has complained of from the beginning of his disability.

"Reviewing the various alleged injuries, since the original one in California, in the light of the explanation given above, one cannot deny that his symptoms may have been exaggerated by sudden motions or strains but, it is my opinion that these exacerbations of pain and the present situation would be the same regardless of the alleged accidents during the interval period.

"What effect did the compression fracture of L–2 have on the present symptoms and disability and incapacity? Compression fractures of the second lumbar vertebra may produce symptoms but they are of a different type than those complained of by this individual and in my opinion, this intercurrent, alleged compression fracture of the second lumbar vertebra has not materially changed the present incapacity and disability of Mr. Kennedy.

"What effect did the alleged accidents have on Mr. Kennedy's back trouble as recounted under the accident at Whittier, the incident at Fish Bay, the incident at Homer, the incident while driving a car, lifting at Rocky Bay, and while he was working for Timber, Inc.? In my opinion, no one can deny that these conditions might have aggravated his back condition but as stated above, I do not believe that this is necessarily true because of the explanation given above. Aggravation in his case might be defined as a speeding up of a series of changes

which follow one another in a logical sequence, once the original degeneration of the intervertebral disc and adjacent structures begins."

In determining the effect of a subsequent occurrence after an original injury, following which claimant was obliged to cease work, the Board had the duty to determine whether the subsequent incidents were an independent intervening cause of the disability or were the proximate and natural result of the first injury; or to determine the causal relation between the incidents of injury and his disability; and where it is found that the latter injury was not an independent occurrence or injury but was the proximate and natural result of the first injury, the Board's determination that the first injury was the proximate cause of the claimant's condition may not be disturbed. Massachusetts Bonding & Ins. Co. v. Industrial Accident Commission, supra; Marsh v. Industrial Accident Commission, 217 Cal. 338, 18 P.2d 933, 86 A.L.R. 563; Head Drilling Co. v. Industrial Accident Commission, 177 Cal. 194, 170 P. 157; Schneider, Workmen's Compensation, Vol. 6, Sec. 1543.

There was some evidence in this case that the original injury may have been aggravated by the injury of June 8, 1951. But it is universally held that whether or not a subsequent incident or accident aggravating the original injury may be of such a nature and occur under such circumstances that it should be regarded as an independent intervening cause or whether such aggravation is the proximate and natural result of the original injury is a question of fact to be decided by the Board. See above; also Ocean Accident & Guarantee Corp. v. Industrial Accident Commission, 38 Cal. App.2d 601, 101 P.2d 704; In re Rock's Case, 323 Mass. 428, 82 N.E.2d 616; Wentworth's Case, 284 Mass. 479, 188 N.E. 237; Falcione's Case, 305 Mass. 433, 26 N.E.2d 308; Head Drilling Co. v. Industrial Accident Commission, supra; Annotation 7 A.L.R. 1186.

The Board here determined, based upon the evidence, that the occurrences of the fall at Whittier and the lifting and jarring at Rocky Bay did not constitute an independent intervening cause for claimant's subsequent disability for which his employers would be liable to pay compensation, but that such was the result of the original accident in California in 1949. In support of this finding we find the rule to be that if an injury is aggravated by a subsequent intervening cause, the question to be determined is whether the original injury contributed to the final result or would the final result have been the same if there had been no previous injury. And if an accident causes an injury and that injury moves forward step by step causing a series of other injuries, each injury accounting for the one following until the final result is reached, the accident which set the first injury or force in motion is responsible for the final result. Schneider, Workmen's Compensation, supra, Sec. 1543(f), p. 53; Pacific Coast Casualty Co. v. Pillsbury, 171 Cal. 319, 153 P. 24; Shell Co. of California v. Industrial Accident Commission, 36 Cal. App. 463, 172 P. 611; Bethlehem Shipbuilding Corp. v. Industrial Accident Commission, 181 Cal. 500, 185 P. 179, 7 A.L.R. 1180; Bailey v. Industrial Commission, 286 Ill. 623, 122 N.E. 107.

Provision is made in many of the compensation acts, including Washington and California, covering subsequent disability arising from a previous accident, but in all such cases it appears that other injuries developing subsequently, as a result of original injuries or an aggravation of an original injury, resulting in permanent total disability, relate back to the claim based upon the original injury. Annotation 72 A.L.R. 1125; 165 A.L.R. 51; 105 A.L.R. 974; Head Drilling Co. v. Industrial Accident Commission, supra; Cicrich v. State Industrial Accident Commission, 143 Or. 627, 23 P.2d 534; Stevich v. Department of Labor and Industries, 182 Wash. 401, 47 P.2d 32; Arnold v. Department of Labor and Industries, 168 Wash. 300, 11 P.2d 825;

Dry v. Department of Labor and Industries, 180 Wash. 92, 39 P.2d 609; Seagraves v. Department of Labor and Industries, 185 Wash. 333, 54 P.2d 1010.

In view of the above conclusive authority, the findings and conclusions of the Board are sustained; judgment may be entered accordingly.