UNDERWRITERS AT LLOYDS, LONDON, Plaintiff,

v.

The ALASKA INDUSTRIAL BOARD, consisting of Henry A. Benson, Chairman, J. Gerald Williams, Member, Ross P. Duncan, Member; Hartford Accident & Indemnity Company; Woman's Society of Christian Service (Seward Sanatorium); and Einar Mattson, Defendants.

No. 7692–A.

United States District Court
D. Alaska,
First Division, Juneau.
March 26, 1958.

R. Boochever, of Faulkner, Banfield & Boochever, Juneau, Alaska, for plaintiff.

J. Gerald Williams, Atty. Gen., of Alaska, for defendant The Alaska Industrial Bd.

Fred O. Eastaugh, of Robertson, Monagle & Eastaugh, Juneau, Alaska, for defendants Hartford Acc. & Indem. Co. and Woman's Society of Christian Service (Seward Sanatorium).

Boynton Kamb, Mt. Vernon, Wash., and Howard D. Stabler, Juneau, Alaska, for defendant Einar Mattson.

KELLY, District Judge.

The plaintiff appeals from an award entered against it by the Alaska Industrial Board. The decision of the Board is as follows:

"Applicant Einar Mattson suffered a personal injury (occupational disease) by accident arising out of and in the course of his employment by defendant Seward Sanatorium, an insured employer. It is our opinion that the insurance carrier on the employer's risk on the last day of harmful exposure, being the last day of employment by Seward Sanatorium, is liable for the payment of compensation and medical care involved in this case.

"The Board has made no decision of any degree of permanent disability."

Einar Mattson was employed by Seward Sanatorium from October 15, 1952 until October 12, 1953. He was an orderly from October 15, 1952 until February 6, 1953 and, as such, his duties consisted of making beds, bathing patients, serving food, and other routine tasks of his occupation of caring for tubercular patients at the Sanatorium. He was a maintenance man from February 6, 1953 until he left the employment of the Seward Sanatorium on October 12, 1953, and during that time his duties consisted of performing carpenter repair work about the premises and in the sick wards.

Chest X-rays were taken of Mr. Mattson during the period of his employment. The X-ray taken when he began his employment on October 15, 1952 was nega-

tive; one taken January 14, 1953 and another taken July 15, 1953 were negative; and one taken when he terminated his employment on October 12, 1953 was diagnosed at that time as negative but upon re-examination was found to show a large quadrilateral shaped shadow, suggesting a cavity in the peripheral half of the left first anterior interspace. In June, 1954, an X-ray taken by the mobile chest X-ray unit in Skagit County, Washington, was questionable and Mr. Mattson was recalled for a large X-ray and in August, 1954, sputum studies revealed the presence of acid fast bacilli at which time hospitalization was advised.

Mr. Mattson was admitted to Firland Sanatorium in the State of Washington on September 17, 1954 and remained until July 29, 1955 when he was discharged and put under the care of the Mount Vernon Clinic, Mount Vernon, Washington. The Firland Sanatorium found that Mr. Mattson had moderately advanced pulmonary tuberculosis. The x-rays taken upon admission revealed the area of disease in the left upper lung field to be in the apical posterior segment of the left upper lobe.

Mr. Mattson then filed a claim against the Seward Sanatorium with the Alaska Industrial Board under the Workmen's Compensation Act of Alaska. Hartford Accident & Indemnity Company was the insurance carrier on the Seward Sanatorium during the employment of Mr. Mattson prior to February 11, 1953 and plaintiff, Underwriters at Lloyds, London, was the carrier during his employment from and after February 13, 1953. After termination of his employment with Seward Sanatorium Mr. Mattson did carpentry work on his own house for several months until he began working as a carpenter for a house builder in Mount Vernon, Washington. He was engaged in the latter job when he entered Firland Sanatorium.

Plaintiff contends:

(1) that although Mr. Mattson contracted tuberculosis, it was not a disease which was due to causes and conditions characteristic of and peculiar to his particular trade, occupation, process or employment during the time he was a maintenance man; and

(2) that if the Board's finding of exposure during the period of plaintiff's coverage is sustained by this Court, the award should be apportioned between the two carriers involved during the period of exposure.

T

The Workmen's Compensation Act of Alaska authorizes compensation for any

"injury by accident arising out of and in the course of employment, including any disease proximately caused by the employment, which is due to causes and conditions that are characteristic of and peculiar to a particular trade, occupation, process or employment, and to exclude all ordinary diseases of life to which the general public are exposed; * * * ". A.C.L.A.1949, 43–3–38.

Mr. Mattson contracted tuberculosis while working at the Seward Sanatorium. On that point there is no argument. The parties agree that during the time Mr. Mattson was employed by the Seward Sanatorium as an orderly his work was within the confines of the above section. The question is whether, during the time Mr. Mattson was employed by the Sanatorium as a maintenance man, his work was such as to also come within this section.

This problem has arisen before in Alaska. In Women's Division of Christian Service of the Board of Missions etc. v. Alaska Industrial Board, 1951, 13 Alaska 166, the Court held that a janitor in the Seward Sanitorium whose duties required him to clean floors and corridors in wards, offices and dining rooms and to dust and clean utility and bath rooms came under the above section and was entitled to compensation for contracting tuberculosis. In Board of National Missions etc. v. Alaska Industrial Board, 1953, 116 F.Supp. 625, 14 Alaska 453, the Court decided that the work of a missionary in Metlakatla, Alaska, brought him under Section 43–3–38 A.C.

L.A.1949 when he contracted tuberculosis. His duties obliged him to conduct funeral services in crowded homes containing persons afflicted with active tuberculosis, hold weekly prayer meetings with such persons, visit tubercular patients in the hospitals, etc.

In each of the above cases the Court's decision was based on the facts as to whether the employment of the claimant was such as to come under the quoted section. So, in order to ascertain whether Mr. Mattson's employment as a maintenance man would bring him under this section we must look to the facts on which the Alaska Industrial Board based their decision.

Mr. Mattson's work as a maintenance man, according to his testimony, took him into the tuberculosis wards about twice a week during this time. He further testified that he came within a few feet of the patients while taking care of his assigned duties. The Alaska Industrial Board found from this evidence that Mr. Mattson was exposed to tuberculosis while carrying out these duties as well as those of orderly.

■ A person employed as a maintenance man and carpenter and who contracted tuberculosis might not come under the above cited section but Mr. Mattson's duties also brought him into the tuberculosis wards several times a week and within a few feet of patients with active tuberculosis. This is substantial evidence that the disease was proximately caused by the employment in the sense that it was due to causes and conditions characteristic and peculiar thereto. It has been repeatedly held that upon review of the entire record, if the findings of the Board are supported by substantial evidence, such findings are binding upon the Court. Kennedy v. Alaska Industrial Board, 1956, 138 F. Supp. 209, 16 Alaska 117. Therefore, the finding of the Alaska Industrial Board that Mr. Mattson was in contact with active tubercular patients throughout his employment at the Seward Sanatorium is affirmed.

2

■ The Board, after finding that Mr. Mattson could have contracted tuberculosis at any time during the year he worked for Seward Sanatorium, decided that the insurance carrier on the employer's risk on the last day of harmful exposure is liable for the payment of compensation and medical care involved. Plaintiff contends, however, that the award should be apportioned between the two insurance companies who were on the risk during that year.

The Workmen's Compensation Act of Alaska does not help us with this question. It is completely silent, so we must consider the problems inherent in compensation for occupational diseases and the general law on the subject. In occupational disease cases there is generally a long period of exposure without any disability and the date of contraction of the disease is not ascertainable. Therefore, there has been difficulty in determining the moment when an employer and insurer become liable. The solutions which have been worked out are discussed by Larson in the second volume of his Workmen's Compensation Law. Section 95.21 says that most frequently liability is assigned to the *carrier* who was on the risk when the disease resulted in *disability,* if the employment at the time of disability was of a kind contributing to the disease.

> Zurich General Accident & Liability Ins. Co. v. Industrial Commission, 1930, 203 Wis. 135, 233 N.W. 772; Textileather Corp. v. Great American Indemnity Co., 1931, 108 N.J.L. 121, 156 A. 840; King v. St. Louis Steel Casting Co., 1944, 353 Mo. 400, 182 S.W.2d 560; Russo v. Despatch Shops, Inc., 1952, 280 App.Div. 1008, 1030, 116 N.Y.S. 2d 788.

Rather than defeat the claim of the employee where the employment at the time of disability was not of a kind contributing to the disease, the *employer* at the time of the most recent exposure which bears a causal relation to the dis-

ability is generally liable for the entire compensation.

> Commissioner of Taxation and Finance v. Nu-Art Advertising Co., 1936, 271 N.Y. 112, 2 N.E.2d 280, 104 A.L.R. 1209; Pacific Employers Insurance Co. v. Industrial Commission of Utah, 1945, 108 Utah 123, 157 P.2d 800; Travelers Insurance Company v. Cardillo, 2 Cir., 1955, 225 F.2d 137.

However, the question of which employer is liable is not before this Court as it is not disputed that Seward Sanatorium is the employer liable to Mr. Mattson. The decision of this Court will deal solely with which carrier is liable where there has been more than one on the risk during the period of exposure.

Some states, by statute, have adopted the idea of apportionment between carriers, but only one state (California) has adopted it by judicial decision. Colonial Insurance Company v. Industrial Accident Commission, 1946, 29 Cal.2d 79, 172 P.2d 884.

The Federal Longshoremen's and Harbor Workers' Compensation Act, 44 Stat. 1424, 33 U.S.C.A., Chapter 18, like the Alaska Act, has no provisions for apportionment, and in Travelers Insurance Company v. Cardillo, supra, [225 F.2d 144] Judge Medina discusses in considerable detail the precise question that we have here. The question, he says, is not whether the claimant may recover in this situation but upon whom shall devolve the burden of paying him. He discusses apportionment and other methods of payment and says that, in view of the present state of medical knowledge relating to occupational diseases and the administrative problems involved, it would be "sheer folly to seek or expect to discover a formula" (for payment) "devoid of any possibility of inequity or seeming injustice." Judge Medina then discusses the legislative intent of Congress in not including the theory of apportionment as to *employers* in the Longshoremen's and Harbor

Workers' Compensation Act, and for this purpose he refers to the fact that at the hearings which preceded the passage of the Act apportionment among employers was suggested and concludes that "it would seem a fair inference that the failure to amend was based upon a realization of the difficulties and delays which would inhere in the administration of the Act, were such a provision incorporated into it." In referring to apportionment among *carriers*, Judge Medina says:

> "There remains the question, *which carrier or carriers are responsible* for the discharge of the duties and obligations of the 'last employer' in respect to his principal liability. *Here we are frankly groping in the dark.* But the conclusion already arrived at with respect to the liability of the employer may fairly be thought to mark the path to be followed here as well. If administrative ease of handling was a consideration of significance in the formulation of the Act with reference to the liability of the employer, then there is small reason to suppose that it was the intention of Congress to inject into the determination of carrier liability the very same conjectural and unsatisfactory estimates which would have been involved in attempting to apportion liability among employers. * * Rather, it would seem far more in keeping with the Congressional recognition of the over-riding importance of efficient administration in this area, to conclude that the treatment of carrier liability was intended to be handled in the same manner as employer liability, and that the carrier who last insured the 'liable' employer during claimant's tenure of employment, prior to the date claimant became aware of the fact that he was suffering from an occupational disease arising naturally out of his employment, should be held responsible * * * ". (Emphasis supplied.)

252

It is unfortunate that there are no reports which can be referred to in connection with the Alaskan Act. However, as noted above, California is the only state that has applied apportionment by judicial decision and even though there is no evidence that the Alaska Legislature considered and rejected apportionment, they did not include it and this Court, in following the weight of interpretation of like statutes, will not write apportionment into the Alaska Act.

In view of the foregoing, the award of the Alaska Industrial Board is affirmed and judgment may be entered accordingly.