MONTI MARINE CORPORATION, Employer and The State Insurance Fund, Insurance Carrier, Plaintiffs Appellants,

v.

Arnold J. QUIGLEY, Deputy Commissioner, Second Compensation District, and Charles McDwyer, Defendants Appellees,

and

Monti Marine Corporation, Employer, and Indemnity Insurance Company of North America, Insurance Carrier, Defendants Appellees.

Civ. No. 18079.

United States District Court
E. D. New York.
Nov. 17, 1958.

Cornelius W. Wickersham, Jr., U. S. Atty., Brooklyn, N. Y., for defendant Arnold J. Quigley, Deputy Com'r, Second Compensation Dist., Irwin J. Harrison, Asst. U. S. Atty., Great Neck, N. Y., of counsel.

Charles G. Tierney, New York City, for plaintiff, The State Ins. Fund. Louis Busell, New York City, of counsel.

ZAVATT, District Judge.

The complaint herein asks this Court to review and set aside as not in accordance with law a certain compensation order filed by the Deputy Commissioner pursuant to the provisions of the Longshoremen's and Harbor Workers' Compensation Act of March 4, 1927, 44 Stat. 1424, 33 U.S.C.A. § 901 et seq., which order awarded compensation to Charles McDwyer, a claimant, for permanent partial loss of hearing resulting from exposure to injurious industrial noises in the course of his employment. The answer requests the affirmance of the aforesaid order. There is no dispute as to any of the material facts or as to the entitlement of Charles McDwyer, the claimant, to compensation. The only dispute is as to which of the two insurance carriers involved, The State Insurance

Fund or the Indemnity Insurance Company of North America, should be held liable as a matter of law for said compensation. Accordingly, plaintiff The State Insurance Fund has moved, pursuant to Rule 56 of the Federal Rules of Civil Procedure, 28 U.S.C.A. for summary judgment in its favor, and defendant Arnold J. Quigley, the Deputy Commissioner involved, has cross-moved for the same relief in his favor.

For twenty years prior to the filing of his claims, claimant was employed as an outside machinist in the repair and maintenance of vessels in various shipyards. In the course of this employment, he was exposed to loud industrial noises caused by other employees, who were working around him. He was employed intermittently by plaintiff-employer during the four or five years prior to the discovery of his occupational loss of hearing. The last day he worked for plaintiff-employer prior to such discovery was September 14, 1956. He did not return to work until October 29, 1956. During the period September 15 through October 28, 1956, claimant was out on strike. On October 25, 1956, at 5 P.M., claimant was examined by Dr. Abraham I. Goldner, an ear specialist. As a result of this examination, claimant discovered for the first time that he had a binaural loss of hearing due to his employment. Claimant then filed his claim for compensation with the Deputy Commissioner on October 30, 1956.

The State Insurance Fund insured plaintiff-employer's compensation liability for the period 12:01 A.M. of October 25, 1950, through 12:01 A.M. of October 25, 1956. The Indemnity Insurance Company of North America insured such liability for the period 12:01 A.M. of October 25, 1956 through 12:01 A.M. of October 25, 1957. From 12:01 A.M. to 5 P.M. of October 25, 1956, the claimant did not work and, therefore, was not exposed to any injurious stimuli. Thus he had not worked or been so exposed between the effective date of the compensation coverage of the Indemnity Insurance Company of North America and the date when he first became aware of his binaural loss of hearing due to his employment. On September 13, 1957 the Deputy Commissioner made an award of compensation against the employer and determined that the plaintiff, The State Insurance Fund, was the carrier liable for payment of the award. He held " * * *; that The State Insurance Fund insured the employer during the last employment in which the claimant was exposed to injurious stimuli; that because of such insurance coverage, The State Insurance Fund is the liable carrier and is responsible for compensation payments; * * * " In its complaint the plaintiffs-appellants seek a decree setting aside and adjudging null and void the order and award of September 13, 1957; enjoining the defendant-appellee, Deputy Commissioner, from enforcing the said order and directing the defendant-appellee, Indemnity Insurance Company of North America, to reimburse The State Insurance Fund for the moneys it paid to the claimant pursuant to the award.

This question was considered in Travelers Insurance Company v. Cardillo, 2 Cir., 1955, 225 F.2d 137, certiorari denied Ira S. Bushey & Sons, Inc., v. Cardillo, 350 U.S. 913, 76 S.Ct. 196, 100 L. Ed. 800. There, three compensation orders were made by the deputy commissioner with reference to the separate claims of Tropea, Johansen and Lebowitz, each of whom claimed a permanent loss of hearing due to his employment. Tropea was employed by Todd Shipyards Corporation (hereinafter referred to as Todd) as a sheet metal worker and throughout the various periods of his employment worked in noisy places. Early in 1953 he experienced difficulty with his hearing when he detected a temporary ringing in his ears. In April or May of that year he began to notice some impairment in his hearing which persisted. On September 4, 1953 he consulted an ear specialist who advised him that he had a permanent loss of hearing due to his employment. On September 30th of that year Tropea filed a claim

with the deputy commissioner for compensation for occupational loss of hearing. Tropea had been employed by Todd as a sheet metal worker throughout various periods as follows: September, 1942 to November, 1945; July, 1948 to May, 1949; December 20, 1950 to and beyond the date when he filed his claim. Todd was insured by the following carriers during the relevant period:

1940 – May 1, 1947 – Fidelity & Casualty Co.
May 1, 1947 – May 1, 1949 – Massachusetts Bonding & Insurance Company
May 1, 1949 on – – Travelers Insurance Company

Thus Travelers was the carrier from the time when the claimant first began experiencing difficulty with his hearing to and beyond the time when the ear specialist advised him that he had a permanent loss of hearing due to his employment. During this period the claimant continued in the employ of Todd and continued to be exposed to the noise to which he had been exposed during his previous periods of employment by Todd. During his last period of employment by Todd, i. e., December 20, 1950, on, Travelers Insurance Company was the carrier insuring Todd. The deputy commissioner found that it was during this last period of employment that the injurious and accumulated effects of the occupational exposure manifested themselves and concluded that Travelers was liable to pay the award. Travelers brought an action in this District (similar to that in the instant case) to review the order of the deputy commissioner and joined as parties defendant the carriers who had insured Todd prior to 1950. These carriers moved for summary judgment. The motion was granted by our then Chief Judge Inch. From the order entered thereon Travelers appealed and the Court of Appeals affirmed Judge Inch's order.

Lebowitz had been employed by Todd as a marine electrician from 1942 to and beyond the date when he filed a claim for compensation and as such was exposed to noises. In January, 1953 he became aware of noises and ringing in his ears and on August 22, 1953 consulted an ear specialist who informed him that he had a permanent loss of hearing due to his employment. He filed a claim on September 16, 1953. Todd had been insured by the following carriers during the claimant's period of employment:

Feb. 6, 1942 – May 1, 1947    Fidelity & Casualty Co.
May 1, 1947 – May 1, 1949    Massachusetts Bonding & Insurance Company
May 1, 1949 – Aug. 22, 1953    Travelers Insurance Company

The deputy commissioner concluded that the three carriers who successively covered Todd during the period of Lebowitz' last employment (from 1942 on) were jointly, equally and severally liable to pay the award because the three of them covered the employer during the period of the claimant's last employment. Only Massachusetts Bonding & Insurance Company appealed from the award by bringing an action in this District. The defendant's motion for summary judgment was granted and the Massachusetts Bonding & Insurance Company appealed.

Johansen was employed by Ira S. Bushey & Sons, Inc. 1930 to 1940; by the United States Navy Yard in Brook-

lyn from 1940 to 1942 and by Ira S. Bushey & Sons, Inc. from 1942 to the date when he filed a claim for compensation. During all the periods of these employments he worked as an iron worker, ship fitter and ship carpenter and was constantly exposed to loud noises. In December, 1952 he noticed buzzing and ringing in his ears and in January or February, 1953 became aware of a loss of hearing which he then thought was of a temporary nature. When the impairment of hearing continued, he consulted an ear specialist on September 16, 1953 who informed him that he had a permanent loss of hearing due to his employment. On October 5, 1953 the claimant filed a claim with the deputy commissioner to recover for such permanent hearing loss. The deputy commissioner concluded that Ira S. Bushey & Sons, Inc., the last employer in whose employment Johansen was continuously exposed for eleven years, was liable for payment of compensation and that the insurance carriers who successively covered the employer during that last period of employment (1942 on) were jointly, equally and severally liable to pay the award. During the period of this last employment Ira S. Bushey & Sons, Inc. was insured by three companies: American Policyholder's Insurance Company and/or American Mutual Liability Insurance Company; Hartford Accident & Indemnity Company and The State Insurance Fund. All of these carriers appealed from the award bringing an action in this District and each of them suggested a different formula which should be applied to occupational disease compensation cases.

In the Johansen and Lebowitz cases the appellants raised the question as to the timeliness of the filing of the notice of injury and the filing of the claim. 33 U.S.C.A. § 912(a) provides that

"Notice of an injury * * * in respect of which compensation is payable under this chapter shall be given within thirty days after the date of such injury * * * (1) to the deputy commissioner in the com-

pensation district in which such injury occurred and (2) to the employer."

33 U.S.C.A. 913(a) provides

"The right to compensation for disability under this chapter shall be barred unless a claim therefor is filed within one year after the injury * * * *"

The carriers who had been directed to pay the awards in the Johansen and Lebowitz cases contended that the date of injury (within the meaning of these sections) is some date earlier than that upon which the accumulated effects of exposure manifest themselves; that the period of limitations should begin to run when the claimant has first had contact with the condition causing the disease. Although in the Johansen case and the Lebowitz case the claimant filed a claim within one year of the date when he first became aware of noises and ringing in his ears, the appellants contended that the injury had occurred more than one year before the respective claims were filed. The Court of Appeals held that, for the purposes of the applicable statutes of limitations, the date of the "injury" is the date when the "injury" is manifested.

"Every claim based upon occupational disease would be barred if the one year limitation period were declared to begin running when contact is first had with the condition causing the disease or when the disease first ensues. At such a time, a potential claimant would have no occasion to realize that there is anything wrong with him, much less that he had suffered damage industrially caused. The supreme court has recognized the absurd effects which would result from the application of such a rule in occupational disease cases and has held, in an analogous situation arising under the limitation provisions of the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq., that an ' "employee can be held to be 'injured' only when the accumulated effects of

the deleterious substance manifest themselves." ' Urie v. Thompson, 1949, 337 U.S. 163, 170, 69 S.Ct. 1018, 1025, 93 L.Ed. 1282. Since the fact that the various claims presently before us were filed well within a year of the 'date of manifestation' is undisputed, we conclude they are not barred by the statute of limitations." 225 F.2d 137, 143.

The Court then considered the question of allocation of liability as between the several employers and the several carriers. As to the several employers it emphasized the fact that occupational diseases are such that it is practically impossible to correlate the progression of the disease with specific points in time or with specific industrial experiences, i. e., that it is practically impossible to determine whether the loss of hearing in the Johansen case, for example, began while Johansen was employed by the United States Navy Yard (between 1940 and 1942) or thereafter, while he was employed by Ira S. Bushey & Sons, Inc. In placing liability on one of the successive employers, the Court interpreted the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. § 901 et seq. and held that

" * * * the Congress intended that the employer during the last employment in which the claimant was exposed to injurious stimuli, prior to the date upon which the claimant became aware of the fact that he was suffering from an occupational disease arising naturally out of his employment, should be liable for the full amount of the award." 225 F.2d 137, at page 145.

It is to be noted that this last employment must be one during which the claimant "was exposed to injurious stimuli."

The Court then considered which carrier or carriers are to be held responsible for discharge of the duties and obligations of the last employer. It held that the same considerations which determined the responsibility of the last employer should determine the liability of the particular carrier.

"There remains the question which carrier or carriers are responsible for the discharge of the duties and obligations of the 'last employer' in respect of his principal liability. Here we are frankly groping in the dark but the conclusion already arrived at with respect to the liability of the employer may fairly be thought to mark the path to be followed here as well * * *. Rather, it would seem far more in keeping with the Congressional recognition of the over-riding importance of efficient administration in this area, to conclude that the treatment of carrier liability was intended to be handled in the same manner as employer liability, and that the carrier who last insured the 'liable' employer during the claimant's tenure of employment, prior to the date that claimant became aware of the fact that he was suffering from an occupational disease arising naturally out of his employment, should be held responsible for the discharge of the duties and obligations of the 'liable' employer. We so hold." 225 F.2d 137 at page 145.

The Court affirmed the order in the Tropea case and remanded the Johansen and Lebowitz cases to the District Court with directions to modify the respective orders in accordance with the opinion of the Court of Appeals, i. e., to find the one appropriate carrier liable instead of finding three carriers jointly and severally liable.

In Underwriters at Lloyds, London v. Alaska Industrial Board, D.C.Alaska 1958, 160 F.Supp. 248, 249, the Court considered the conflicting contentions of two carriers as to liability under the Workmen's Compensation Act of Alaska. This Act authorizes compensation for any "injury by accident arising out of and in the course of employment, including any disease proximately caused by the employment, which is due to causes and conditions that are characteristic of

and peculiar to a particular trade, occupation, process or employment, * * * " A.C.L.A.1949, § 43–3–38. In that case the claimant worked as an orderly for the Seward Sanatorium from October 15, 1952 to February 6, 1953 and as a maintenance man from February 6, 1953 to October 12, 1953, when he terminated his employment. His work as a maintenance man took him into the tuberculosis ward about twice a week. Hartford Accident & Indemnity Company was the carrier during the period of the claimant's employment to February 11, 1953. Plaintiff was the carrier during the period of his employment from and after February 15, 1953. After he had terminated his employment and had worked elsewhere, he entered the Firland Sanatorium on September 17, 1954 where it was found that he was suffering from tuberculosis. It is to be noted that the claimant did not become aware of the fact that he had contracted tuberculosis until some time after he had terminated his employment with the sanatorium. The defendant made a determination that the claimant had contracted tuberculosis while working at the Seward Sanatorium; that this was an injury arising out of and in the course of his employment and that the insurance carrier on the employer's risk on the last day of harmful exposure was liable for the payment of the award, i. e., that Underwriters at Lloyds, London was liable. It is to be noted that this carrier was on the employer's risk during several months of the claimant's last exposure to harmful stimuli.

In the instant case both carriers concede that the claimant did not become aware of his loss of hearing until he visited the doctor on October 25, 1956 at 5 P.M., at which time the Indemnity policy of compensation insurance was in effect. The plaintiff contends that it is the carrier whose policy was in effect when the claimant became aware of disablement that is liable to pay the award even though the disablement occurred in fact prior to the effective date of that carrier's policy and despite the fact that the claimant performed no work and was exposed to no injurious stimuli during that carrier's policy. It is the opinion of the Court that the plaintiff has misinterpreted the Travelers case, supra and the Underwriters case, supra. In the Travelers case, supra, the date of awareness of the injury measures the time within which the claimant must serve his notice and file his claim pursuant to §§ 912 and 913, 33 U.S.C.A., the Longshoremen's and Harbor Workers' Compensation Act. The date of awareness, however, does not determine the date of exposure to the injurious stimuli. In both of these cases the claimant was exposed to injurious stimuli during the terms of several policies of compensation insurance, including the term of the last such policy and, in each case, the carrier was held liable to pay the award not upon the ground that it insured during the last period of claimant's employment or during the period when the claimant became aware of his injury but, rather, on the ground that that carrier was the last carrier which insured the employer during the last period of employment during which the claimant was exposed to injurious stimuli. The rationale of these decisions is implicit with the requirement that there must be a causal relationship between the injury and the employment to the date of such injury; that where the injury bears no relation to any work performed by the claimant after the date of the injury, the carrier during such subsequent period is not liable to pay the award for an injury suffered during the term of the liability of a prior carrier. In the instant case the claimant was exposed to injurious stimuli during the term of the policy of the State Insurance Fund. He was not so exposed during the period of the policy of the Indemnity Insurance Company of North America.

The motion of the plaintiff-appellant for summary judgment is denied. The cross-motion of the defendant-appellee, Arnold J. Quigley, District Court, Second Compensation District, for summary judgment is granted. This is an order and the Clerk is hereby directed to enter judgment accordingly.