[S. F. No. 7328.   In Bank.—November 8, 1915.]

## PACIFIC COAST CASUALTY COMPANY and J. L. BRUCE, Petitioners, v. A. J. PILLSBURY et al., Members of the Industrial Accident Commission, Respondents.

WORKMEN'S COMPENSATION AND SAFETY ACT—INJURY IN COURSE OF EMPLOYMENT—SUBSEQUENT INJURY NOT IN COURSE OF EMPLOYMENT.— The Workmen's Compensation and Safety Act does not authorize the commission to award to an employee injured in the course of his employment compensation for an additional injury sustained by him afterward aggravating the first injury and prolonging the disability, but not incurred in the course of his employment.

ID.—CONSTITUTIONAL POWER OF LEGISLATURE.—The legislature may commit to an Industrial Accident Board the redress of accidents occurring only in the course of the employment, but not accidents occurring to a former employee after terminating his employment, or of subsequently occurring aggravations of an original injury sustained in the course of the employment, unless they are the natural and approximate results of the original injury.

ID.—CONSTRUCTION OF STATUTE—CONSTITUTIONAL POWER OF LEGISLATURE.—A construction of paragraph (e) of section 16 of the act, that compensation shall not be paid for disability so far as it is aggravated by unreasonable refusal to submit to medical or surgical aid, which would make that provision the only exception to the general rule of the act and would authorize the commission to award com-

pensation for injuries sustained otherwise than in the course of the employment, would give to the act an effect which the legislature is not authorized to enact.

ID.—UNSWORN OPINION NOT EVIDENCE.—A signed opinion as to whether the injury was the natural and proximate result of the original injury, not under oath, and not given before the referee or the commission, with no notice to the employer or the insurer, cannot be considered in reviewing the findings of the commission.

ID.—LIEN ON AWARD IN FAVOR OF PHYSICIAN—REQUISITES OF LIEN.— Under section 29 of the act providing for a lien on the award in favor of the physician attending the injured party, no lien is created unless the notice referred to in section 29 is given and the amount of the lien is fixed by the board.

APPLICATION for a Writ of Review, prayed to be directed against A. J. Pillsbury et al., members of the Industrial Accident Commission.

The facts are stated in the opinion of the court.

T. T. C. Gregory, D. Hadsell, and Joe G. Sweet, for Petitioners.

Christopher M. Bradley, for Respondents.

SHAW, J.—This is a proceeding in *certiorari,* under section 84 of the Workmen's Compensation Act, to review an award made by the Industrial Accident Commission in favor of Percy McCay against J. L. Bruce, his employer, and the Pacific Coast Casualty Company, an insurer.

McCay was working in a garage at Bakersfield, in the employ of Bruce. While cranking a car on July 14, 1914, the radius of his right arm was broken and his wrist dislocated. He was never in the employ of Bruce after the accident. The injury received proper medical and surgical treatment, the bones knit well, and progressed toward recovery as usual in such cases until the latter part of August. At that time he went from Bakersfield to Kernville in an automobile, and remained there five or six days, returning about the 1st of September. During this trip the bone which had been broken slipped or was shifted in such a manner that it became necessary to break it apart and reset it. The slip or shift of the partly knit bone was caused by something other than natural causes, either by carelessly using the arm

or by a new accident. Up to that time Bruce had regularly paid him $13 each week, that being a little in excess of the amount due him, under the provisions of the act, for the disability caused by the accident. The operation of resetting the arm was performed on September 11, 1914. The slipping or shifting of the bone, and the necessary resetting, caused a considerable prolongation of the disability. Bruce and the insuring company admitted liability for the disability and for medical treatment, for the average period that would have been required if no new injury had occurred to the bone. They refused to pay for the medical treatment and prolongation of the disability caused by the slipping of the bone aforesaid. Over this a dispute arose and application was made to the Industrial Accident Commission by McCay for an award therefor. The commission allowed compensation for the full time, less payments made, and for all medical services rendered, without regard to the fact that the additional disability arose from a subsequent intervening cause.

The commission made no finding concerning the cause of the slipping of the bone and the additional disability ensuing therefrom other than the general finding that by reason of said accident and injury the applicant sustained a temporary, total disability lasting from July 14, 1914, to October 13, 1914, and for an indefinite time thereafter not susceptible of being foretold. There is a statement that the evidence is insufficient to show that it was due to any disobedience by McCay of the orders of his physician. But this cannot be regarded as a finding that it was due to natural causes. The only evidence on the subject was that of the two physicians who attended McCay and who reset the bone. One of them testified that in his opinion it slipped from something other than natural causes; the other that it might have been caused by the use of the arm too soon. McCay said nothing about it, and he was not asked to do so.

If we treat the general finding aforesaid as a sufficient declaration that the disability in controversy was the natural and proximate result of the original accident, then it is a finding without any substantial support in the evidence. The question is, therefore, clearly presented whether or not, where the employee has sustained an injury by accident arising out of and in the course of the employment, the commission is authorized by the act to award compensation to him for an

additional injury sustained by him afterward, not in the course of his employment, by an accident or act which aggravates the first injury and prolongs the disability. Upon an examination of the provisions of the act and of the constitutional amendment upon which it is founded, we are satisfied that the commission has no such power, and that in doing so in this case it acted in excess of its jurisdiction.

The constitutional provision is that the legislature may "create and enforce a liability on the part of all employers to compensate their employees for any injury incurred by the said employees in the course of their employment." It proceeds to declare that the legislature may establish an industrial accident board and empower it to settle disputes concerning the liability which the legislature may create under the authority so given. (Art. XX, sec. 21.) This action by such board would be an exercise of judicial power. For that purpose it is, in legal effect, a court. Section 1 of article VI vests the judicial power of the state "in the senate, sitting as a court of impeachment, in a supreme court, district courts of appeal, superior courts," and such inferior local courts as the legislature may establish. Under this provision the legislature would be without authority to give judicial power to any general state board or tribunal. Except for local purposes the section disposes of the whole judicial power of the state and vests all of it in the courts expressly named therein, leaving none at the disposal of the legislature. Authority to the legislature to create another state tribunal and vest it with judicial power over this new class of cases must be sought for elsewhere in the constitution. It is found only in the aforesaid section 21 of article XX. It follows that this section measures and limits the legislative power in that respect. The second sentence of the section authorizes the creation of a state board to settle disputes arising under the legislation authorized by the first sentence. This includes only disputes arising out of the newly to be created liability of an employer to his employee for an injury incurred by such employee "in the course of" the employment. It is these injuries only the redress of which may be committed by the legislature to a state industrial accident board. Hence it follows necessarily that the legislature cannot give such board power to settle disputes and allow compensation from the employer to a person who has been or

is an employee, for a personal injury which was not incurred by him "in the course of" his employment, or which happened after the employment had ceased and was not the natural and proximate result of the employment, or of some injury which did occur in the course of his employment. It could not give such board power to allow compensation to McCay for the additional disability or expenses arising from the slipping of the broken bone, unless such slipping was the natural or proximate result of the original injury.

An examination of the act in question shows that the legislature has not even attempted to provide compensation for such collateral injuries, or to empower the Industrial Accident Commission to do so. It creates a liability against an employer in favor of his employee only "for any personal injury sustained by his employees by accident *arising out of and in the course of the employment,*" and in favor of dependent persons if death ensues from such injury. (Stats. 1913, p. 283, sec. 12, subsec. a.) Certain conditions must concur, but they do not enlarge the scope of the above quoted language. This clearly does not include an additional injury to the employee from an accident to him occurring after the employment had ceased and while he was engaged in his own affairs outside of and not connected in any manner with his employment.

This would be true as well where the subsequent injury is occasioned by the negligence of the injured person, or of some third person, without accident, as where it is accidental, if the subsequent injury occurs after the employment has ceased and is neither the natural nor the proximate result of the injury received in the course of the employment. Under the law in force prior to the Workmen's Compensation Act the principle was well established that a person injured by the negligence of another must use ordinary care to avoid aggravating or prolonging the effects of such injury, and that he cannot recover for an increase of disability caused by his failure to use such care. (4 Sutherland on Damages, 3d ed., p. 3664; *Baker* v. *Borello,* 136 Cal. 165, [68 Pac. 591]; *Fullerton* v. *Fordyce,* 144 Mo. 533, [44 S. W. 1053]; *Allender* v. *Chicago etc. Co.,* 37 Iowa, 269; *Moore* v. *Kalamazoo,* 109 Mich. 176, [66 N. W. 1089].) An additional injury to McCay, caused by carelessly using his arm too soon, is as much a new injury not within the terms of the con-

stitution or statute, as if it had occurred by accident. The commission, upon the facts shown, was therefore without power to award compensation for the additional disability or for the expenses caused by the slipping of the broken parts of the bone.

We are not unmindful of the provisions of paragraph (e) of section 16 of the act, providing that compensation shall not be paid for disability so far as it is caused, continued, or aggravated by an unreasonable refusal to submit to medical or surgical treatment, the risk of which is inconsiderable in view of the seriousness of the injury. If it is claimed that the expression of this exception to the rule of compensation excludes all other·exceptions, and authorizes the commission to award compensation for subsequent injuries not occurring during the employment, it would be beyond the authority given to the legislature by the constitution. If no such implication arises, it would have no effect whatever upon the question we have considered.

It is claimed that evidence that the slipping of the bone was the natural or proximate result of the original injury is to be found in a statement in the record signed by Morton R. Gibbons. It purports to express his opinion, based upon a perusal of the testimony. He says that if the fracture of the bone was very oblique, it might not have been possible to reduce it and retain it in position "without open treatment," and that there might have been "nonunion of the broken fragments" even if the treatment was of the best. The difficulty with this hypothesis, if it were entitled to any weight at all, is that the testimony shows that the slipping must have occurred at about the end of the six weeks required for complete knitting of the bone, that up to that time there was union of the bone and it was in good position, and, consequently, that the fracture was not sufficiently oblique to prevent proper union in the usual way.

But it was entitled to no weight and should not have been considered by the board. It was not made under oath. It was not part of the evidence given before the referee or before the commission. The employer and the insurer were not informed that it was to be given to the board, or considered, or that it was filed, and they had no opportunity to interrogate Gibbons, or to endeavor to make further proof that the fracture was not oblique or that the slipping was not due

to natural causes, or that the conditions he appears to have assumed did not exist. It does not even appear that the board did consider it. The recitals in the findings, on their face, show that it was not considered. We cannot give it any weight in our consideration of the question.

We cannot determine from the record before us how much of the award was given for the disability which would have naturally existed after September 1st by reason of the original accident and how much was allowed on account of the additional injury from the later accident or injury. It will be necessary for the commission to rehear the case and allow only for the disability which they find would have existed if the bones had not slipped, unless they find further from competent evidence that the slipping of the bones was the natural or proximate result of the original injury.

Section 29 of the act provides that if notice in writing be given to the employer of a claim for services rendered to the injured employee in treating the injury, by any physician or other person, for which the employer is made liable, such claim shall be a lien against the award, and that the commission must fix the amount thereof in a reasonable sum, and may, in its discretion, order the same paid directly to the person entitled. The award in this case directs that the physicians' fees for treatment of McCay be paid by the employer or insurer "to the persons entitled to receive same." It does not fix the amount thereof nor name the persons entitled. The record does not show that the notice required by section 29 was given. Unless such notice is given, the award must be made directly to the injured person, leaving him to adjust the matter with the physicians. If the notice was given and the lien thereon is declared in favor of the physicians or other persons, the amount thereof must be fixed by the board.

It is ordered that the award be annulled and that the commission take such further proceedings in the matter as it may deem advisable.

Lorigan, J., Sloss, J., Melvin, J., Henshaw, J., and Angellotti, C. J., concurred.