[S. F. No. 8257. In Bank.—January 9, 1918.]

## HEAD DRILLING COMPANY et al. (Corporations), Petitioners, v. INDUSTRIAL ACCIDENT COMMISSION et al., Respondents.

WORKMEN'S COMPENSATION ACT — "FURTHER DISABILITY" FOLLOWING ORIGINAL INJURY AND AWARD—PROXIMATE RESULT OF ORIGINAL INJURY.—A second or subsequent accident or incident aggravating an original injury may, from its nature, and the circumstances attending it, be the proximate result of an original injury for which an award was previously made.

ID.—PROXIMATE CAUSE—QUESTION OF FACT FOR INDUSTRIAL ACCIDENT COMMISSION.—Whether a subsequent incident or accident is the proximate cause of a further disability, following it, or an independent intervening cause, is a question of fact for the Industrial Accident Commission, whose conclusion must be sustained by the courts, whenever there is any evidence in the record to sustain such conclusion on any reasonable theory.

ID.—SECOND INJURY PROXIMATE RESULT OF FIRST ACCIDENT—EVIDENCE SUFFICIENT.—On review of an award of the Industrial Accident Commission allowing indemnity for a further disability, due to separation of broken portions of the fibula, in a previously fractured leg, for which disability indemnity had been allowed several months before, the evidence is examined and found to sustain the conclusion by the commission that the second injury or "accident" was the proximate and natural result of the original injury.

APPLICATION for Review against the Industrial Accident Commission.

The facts are stated in the opinion of the court.

Redman & Alexander, for Petitioners.

Christopher M. Bradley, for Respondents.

ANGELLOTTI, C. J.—This is a proceeding to review an award in favor of one W. H. Scott, for injuries due to accident on February 24, 1916, in the course of and arising out of his employment, against the Head Drilling Company, his employer, and the Georgia Casualty Company, insurer of the employer. It was concluded by the commission that the disability of Scott continued up to and still existed at the time

of judgment by the commission, and the award was for $243.12 as the balance due as disability indemnity to September 15, 1916, and for the further sum of $15.56 per week from that date until the termination of the disability or the further order of the commission, not to exceed in all 240 weeks. The award is attacked solely on the ground that any disability beyond the period of fourteen weeks from March 10, 1916, was in fact due to a second accident and injury which did not occur in the course of Scott's employment, and on account of which the employer is in no way responsible, and that the commission had no jurisdiction to award compensation for the disability in so far as it was caused by the second injury.

On February 24, 1916, Scott, while removing a sprocket from an engine, was struck by a fly-wheel, sustaining a fracture of several ribs and a Pott's fracture of the left leg. The fracture of the leg was further described in the findings as a spiral fracture, and the evidence disclosed that the fibula was badly comminuted. He was taken to a hospital, where he remained till April 12th, being attended by a doctor who was paid by the insurance company. There appears to be no question as to the very serious nature of the fracture, the difficulty of setting the bones in place and in thereafter holding them in place until a permanent union was effected, and the slowness of complete recovery. According to some of the evidence, a recovery within four months "would be very good." After reducing the swelling and removing "several little fragments" of bone, the doctor "tried to get the bone lined up in proper apposition," and "used kangaroo tendon to support the broken fragments in place," and put the leg from the toes to just below the knee in a plaster cast. At the end of four or five weeks the cast was split and opened for "massage and manipulation," but still used as a protection, being held by bandages over it. An X-ray taken by the doctor indicated, according to his testimony, that the bones were "in good position." There is some uncertainty in the evidence of the doctor as to the exact date when this X-ray was taken. We assume it was after the cast was opened, but there is testimony that this was some little time before Scott's discharge from the hospital. About the twelfth day of April he was discharged from the hospital, the doctor deeming it best that he should begin to use the leg, but still supervising the case.

He went to his home, the cast still on the leg, using crutches. On the evening of April 15th what is called the ''second accident'' occurred. Scott testified that he was sitting at the dining-room table, and arose to get some kodak pictures that were on a wardrobe shelf just back of him. He said: ''I raised up and turned around like this and got the pictures, and when I turned back there was a wrinkle in the rug that straightened out under the good foot. I didn't have to take a step, but when the wrinkle straightened out I caught my hand on the table and chair and this heel struck the pedestal of the table or a chair, I don't know which it was. I never fell. I never fell to the floor. It hurt me quite a bit for about an hour, and after that I didn't realize any more pain and I slept all right that night.'' An X-ray taken within two or three days thereafter showed that the fragments of bone were not entirely in place.

The accident commission made the following finding: ''That during the course of the employee's convalescence from his injuries, and while his fractured leg was still in a cast, it was found, on or about April 15, 1916, that the broken portions of the fibula, previously placed in apposition for healing, had separated, necessitating further surgical treatment and prolonged disability; that the danger of such separation from natural causes in a fracture of this type, a spiral fracture, is very great and of frequent occurrence, with or without any immediate exciting cause; that the danger of such subsequent separation is to be anticipated in fractures of this type and is a natural consequence of the original injury; that the evidence is insufficient to show that the separation was due to any substantial independent intervening cause or to any independent intervening cause, but that said separation was instead a proximate and natural result of the original injury.''

It is earnestly argued that there is no support in the evidence for this finding, in so far as it establishes that the separation of the broken portions of the fibula was not due to any independent intervening cause, but was in fact a proximate and natural result of the original injury. Of course, the basis for this contention is the claim that the evidence establishes without conflict that the incident of April 15th caused the displacement. There certainly is strong support for this theory in the record, and it may be that the claim is well based, but, if this be so, we do not think it disposes of the case. We are

of the opinion that a subsequent incident or accident aggravating the original injury may be of such a nature, and occur under such circumstances, as to make such aggravation the proximate and natural result of the original injury. Whether the subsequent incident or accident is such, or should be regarded as an independent, intervening cause is a question of fact for the commission, to be decided in view of all the circumstances, and its conclusion must be sustained by the courts whenever there is any reasonable theory evidenced by the record on which the conclusion can be upheld. The testimony of Scott as to exactly what occurred on the evening of April 15th must be accepted here as true. According to this there was nothing but the accidental striking by Scott of the heel of the foot of the injured limb against the pedestal of the table or a chair, done in the attempt to save himself from a fall, something to have been reasonably anticipated when he was discharged from the hospital in the condition in which he then was, and all of which happened without any negligence on his part. Surely if such a thing might cause a displacement of the bones, he was in no condition to be called on to go about without an attendant, and it was reasonably to be anticipated that if he was left thus to care for himself, such a thing would occur. We have already noted the serious nature of the fracture, the length of time required to effect a permanent reunion of the bones, and the extreme difficulty of keeping the bones in place and preventing displacement. Under all the circumstances it appears to us that it might well be concluded, as was concluded by the commission, that such an incident as was described by Scott was not an independent, intervening cause, within the meaning of the law, but that the striking of the heel and consequent separation of the bones, which had been partially but not permanently united, was simply a proximate and natural result of the original injury. Our conclusion is not at all opposed, in our opinion, to what is said in *Pacific Coast Casualty Co.* v. *Pillsbury,* 171 Cal. 319, [153 Pac. 24]. The question there was whether the commission is authorized by the act to award compensation to the employee ''for an additional injury sustained by him afterward, not in the course of his employment, by an accident or act which aggravates the first injury and prolongs the disability.'' The answer was that it had no such authority if the subsequent injury ''is neither the natural nor the proximate

result of the injury received in the course of the employment.'' It was fully recognized in that case, we think, that the subsequent injury may be the proximate result of the injury received in the course of the employment, and compensable under the act, and the finding to that effect in this matter has sufficient support in the evidence.

The award is affirmed.

Lawlor, J., concurred.

SHAW, J., Concurring.—The Workmen's Compensation Act imposes upon the employer the duty and burden of compensating his employee for a disability caused by a personal injury sustained by accident, only when such injury happens in the course of the employment and arises out of it. (Sec. 12.) Compensation for a ''further disability'' under subsection c, of section 16, as amended in 1915 (Stats. 1915, p. 1085), is allowed only when ''the original injury has caused further disability.'' It follows that a ''further disability'' not caused by the original injury, but by the employee's own negligence, and not happening in the course of a subsequent employment by the same employer, and arising out of it, is not compensable at all under the act. This being so, the award for the further disability here under review can be sustained only upon the ground that the subsequent accident and resulting displacement of the fractured bone was not the result of a lack of ordinary care on the part of the injured employee. An injury so occurring subsequently may be regarded as a part of the proximate consequences of the original accident. The finding of the commission is in effect a finding that at the time of the second accident Scott was not guilty of a lack of the ordinary care which reasonably prudent persons in his condition exercise for their own safety from injury. I think it cannot be said, as matter of law, that such finding is without any evidence to support it. For these reasons I concur with the conclusion of the Chief Justice.

Sloss, J., Melvin, J., and Wilbur, J., concurred.

Rehearing denied.