[S. F. No. 22697. In Bank. Jan. 22, 1970.]

LOUIS J. LeVESQUE, Petitioner, v.
WORKMEN'S COMPENSATION APPEALS BOARD,
FOOD MACHINERY AND CHEMICAL CORPORATION et al.,
Respondents.

628

## COUNSEL

Morgan, Beauzay & Hammer, Robert T. Bledsoe and Victor H. Beauzay for Petitioner.

Everett A. Corten, Rupert A. Pedrin, Marcel L. Gunther and Robert Mac-Lean for Respondents.

## OPINION

**TOBRINER, J.**—Petitioner seeks review of a decision of the Workmen's Compensation Appeals Board (hereinafter appeals board) after denial of reconsideration in which the appeals board adopted the report and recommendation of the referee who decided that petitioner was entitled to further medical treatment for his injuries but was not entitled to an award of temporary compensation. We conclude that the appeals board's order denying reconsideration may incorporate and include the report of the referee, as long as the referee's report makes reasonably clear the basis of decision; but upon a review of the entire record we hold the appeals board's decision in this case lacks the support of substantial evidence and thus cannot stand.

### 1. *The Facts*

Petitioner worked for the Food Machinery and Chemical (FMC) Corporation as a Du-All Saw operator and bar stockkeeper in San Jose, California. Apparently both jobs must be performed together and involve the cutting and storage of metal. Although the petitioner could use an overhead crane for most lifting, the work at times required petitioner to lift by hand stock weighing 200 to 250 pounds.[1] While in the course of his

---

[1]The company job description indicates that "Mechanical aids are available for handling heavy material; however, average weight material must be handled occasionally, and lightweight material frequently." The referee summarized the evidence concerning the lifting required by the job: "He [LeVesque] used one overhead crane, but sometimes had to lift stock by hand, in certain areas. It would weigh from 200 to 250 pounds."

employment, petitioner sustained three separate injuries. On August 14, 1967, he injured his right knee. Having received medical attention, and continuing in his regular employment, he suffered an injury to his left knee on October 18, 1967. Again he received treatment and continued to work until he injured his right elbow on October 26, 1967. Petitioner ceased work on account of the third injury on November 3, 1967, and began receiving temporary disability compensation.

Petitioner initially received treatment from Dr. Karl Schaffl, a physician for the insurance carrier, but Dr. Schaffl referred petitioner to Dr. John J. Dedinsky, an orthopedic specialist, who has treated petitioner for all three of his injuries under authorization from the insurance carrier.

One of Dr. Schaffl's earliest reports indicates that petitioner is suffering from olecranon bursitis, particularly in his right elbow. Since the FMC Corporation had terminated petitioner's employment, Dr. Schaffl concluded on November 13, 1967, that petitioner is "entitled to compensation until bursitis subsides." On December 11, 1967, Dr. Schaffl indicated that he was relying upon consultation with Dr. Dedinsky and that "[p]atient will remain on compensation until recovered from all 3 injuries." Dr. Schaffl reported on January 3, 1968, that petitioner had recovered from his injuries to his right elbow and right knee but still required treatment for his left knee. Dr. Schaffl did not clear petitioner for work, but referred the matter to Dr. Dedinsky.

On January 11, 1968, Dr. Roy Smith agreed with Dr. Schaffl that petitioner required treatment for olecranon bursitis but concluded that petitioner suffered no disability. Neither the referee nor the parties apparently rely upon Dr. Smith's very brief report or Dr. Schaffl's incomplete report. Dr. Smith only saw petitioner once. The referee concluded that petitioner continued disabled through March 1968 without citing Dr. Smith's or Dr. Schaffl's reports, but instead by relying on Dr. Dedinsky's many reports. Dr. Smith's and Dr. Schaffl's reports are not relevant to the period after March 1968 during which petitioner was under the care of Dr. Dedinsky and about which we are here concerned.[2]

Dr. Dedinsky reported on January 17, 1968, to Dr. Schaffl that petitioner was "still totally disabled." But on February 15, 1968, Dr. Dedinsky indicated that petitioner "could return to his former type of work as of February 26, 1968."[3] Although petitioner continued unsuccessfully to

---

[2]The referee properly refused to rest his decision upon medical reports which are no longer germane. (*Berry* v. *Workmen's Comp. App. Bd.* (1968) 68 Cal.2d 786, 792 [69 Cal.Rptr. 68, 441 P.2d 908]; *Jones* v. *Workmen's Comp. App. Bd.* (1968) 68 Cal.2d 476, 480 [67 Cal.Rptr. 544, 439 P.2d 648].)

[3]Dr. Dedinsky clarified his instructions in his letters of March 21 and April 8, 1968. (See fn. 2, *supra*.)

seek employment, he received no temporary disability compensation after March 13, 1968. Following termination of temporary disability indemnity payments, petitioner applied for and received unemployment insurance benefits for the periods he remained without work. On March 21, 1968, Dr. Dedinsky cleared petitioner for work: "To WHOM IT MAY CONCERN: Louis LeVesque is under my care for an orthopedic problem. He may return to his former type of work, as a Do All operator on Monday, March 25th, 1968. He may not lift more than 25 lbs. of weight."[4]

Again on April 8, 1968, Dr. Dedinsky filed a report which the referee quoted: "Mr. LeVesque is showing good progress at the present time. He was encouraged to continue with the use of moist heat, elastic bandage support and increased active exercises with reference to the muscles in the region of both knees. At this time, it is felt he could return to his former type of work, as a Do All operator *not requiring heavy lifting*. I plan to recheck him in a period of six weeks." (Italics added.) The treating doctor has never released petitioner from the weight limitations imposed in his work clearance of March 21 and his medical report of April 8, 1968.

After Dr. Dedinsky's limited work clearance, petitioner continued unsuccessfully to seek work until mid-summer 1968 when he secured a job as a cook for the County of Santa Clara, because he had worked as a cook in the past. While petitioner was employed by the county he visited Dr. Dedinsky on July 25 and Dr. Dedinsky reported his conclusion on August 6, which the referee quoted: "Mr. Louis LeVesque is showing some progressive stabilization of his injuries to both knees and the right elbow. At present, he is working as a cook and feels this is not causing him any particular problem with reference to his knees. He was advised to continue with the use of periodic heat and active exercises for the muscles in both lower extremities. I plan to recheck him in a period of two months." Petitioner remained at work for the 30-day probationary period, but he could not work full time. At the end of the 30 days the county informed petitioner that his work appeared unsatisfactory and released him.

Petitioner's unemployment compensation coverage ended in September 1968. He continued to seek work and secured a job as a cook for Sweden House. While petitioner was employed at Sweden House, he reported to Dr. Dedinsky for his regular appointment. Dr. Dedinsky did not note

[4]Although the applicant's attorney did not submit Dr. Dedinsky's work release of March 21, 1968, to the referee, the applicant testified as to the substance of the work release at the hearing before the referee on March 4, 1969, and the attorney did submit Dr. Dedinsky's letter of April 8 which indicates the same limitation on his ability to perform heavy lifting as required by his occupation. In his summary of the evidence the referee said: "Dr. Dedinsky released him [for work], with a lifting limitation of 25 pounds."

petitioner's difficulty in keeping a job as a cook, but simply concluded, "His symptoms are not too disabling and he has been able to continue working as a cook." After working only one week at Sweden House, petitioner was dismissed because of his difficulty standing and lifting.

Dr. Dedinsky has reported further visits with petitioner on December 12, 1968, February 14, 1969, and May 22, 1969.[5] All these reports and petitioner's testimony before the referee on March 4, 1969, indicate (1) that petitioner continues to suffer from his bursitis condition and the consequence of his three injuries, (2) that petitioner continues to receive treatment for his injuries, and (3) that Dr. Dedinsky has neither repeated nor withdrawn his weight lifting limitation. Continuing to seek work, petitioner requested the assistance of the Department of Rehabilitation. Upon the department's advice petitioner returned to school to learn basic mathematics and English so that he could secure other employment.

At the request of petitioner's attorney, Dr. Messinger thoroughly examined petitioner on November 29, 1968, and rendered a conclusion which the referee quoted, "The patient has been advised to continue under the care of Dr. John Dedinski. I do not think this case will be ready for closure for at least another year. He still should be in a modified work category, trying to avoid squatting and kneeling wherever possible, as well as, trying to avoid contusing the right elbow."

Petitioner filed an application for workmen's compensation benefits for the three injuries on January 22, 1969, and the three cases[6] were consolidated for a hearing held on March 4, 1969. The referee found that petitioner's occupation is that of a Du-All Saw operator and bar stockkeeper; that his condition arose from injuries in the course of his employment; that his condition is not yet permanent and stationary; that he did not suffer temporary disability beyond March 21, 1968; and that petitioner is entitled only to further medical treatment reasonably necessary to cure the effects of the injury.

Having filed a timely petition for reconsideration, petitioner contended that he continues to be temporarily disabled and deserves an award of temporary disability compensation until he can return to work. The referee filed a report and recommended denial of reconsideration. After summarizing the medical history of petitioner's condition, the referee con-

---

[5]Dr. Dedinsky's report of May 22, 1969, followed the submission of the case to the referee on March 4, but indicates the continuing medical treatment which the applicant requires and for which the referee provided compensation.

[6]Case No. 69 SJ 25236 deals with applicant's injury to his right knee which occurred on August 14, 1967. Case No. 69 SJ 25237 concerns applicant's injury on October 18, 1967, to his left knee. Case No. 69 SJ 25238 arises from applicant's injury to his right elbow, which occurred on October 26, 1967.

cluded, "The general tenor of the medical reports, especially when considered in the light of other factors, suggests that the doctor's cautions were more in the nature of prophylactic advice rather than rigid restrictions."

On May 22, 1969, the appeals board filed an order denying reconsideration.[7] The petitioner sought a writ of review from the Court of Appeal for the First Appellate District, Division Four, which denied the petition without opinion on September 19, 1969. We granted a hearing to decide whether the appeals board can satisfy the requirements of Labor Code section 5908.5[8] in denying a petition for reconsideration by incorporating by reference the referee's report. We also undertook consideration of the issue whether the appeals board's denial of temporary disability compensation rests upon substantial evidence.

2. *The appeals board may deny a petition for reconsideration by memorandum order incorporating the report of the referee, so long as the report of the referee details the facts and reasons upon which it relies.*

In *Evans* v. *Workmen's Comp. App. Bd.* (1968) 68 Cal.2d 753 [68 Cal.Rptr. 825, 441 P.2d 633], we held that the appeals board did not regularly pursue its authority under Labor Code section 5908.5 in rendering a decision *after granting reconsideration* without specifying in detail the evidence relied upon and the reasons for the decision. Following our decision in *Evans* the Courts of Appeal have wrestled with the related issue of whether section 5908.5 requires the appeals board to state in detail the evidence relied upon and the reasons for its decision *to grant or deny a petition for reconsideration.* (Compare *Gaiera* v. *Workmen's Comp. App. Bd.* (1969) 271 Cal.App.2d 246, 248 [76 Cal.Rptr. 656]; *Wasserman* v. *Workmen's Comp. App. Bd.* (1968) 33 Cal. Comp. Cases 790, 792; with *B-L Ranch, Inc.* v. *Workmen's Comp. App. Bd.* (1968) 266 Cal.App.2d 192, 194-195 [73 Cal.Rptr. 124]; *Holcomb* v. *Workmen's Comp. App. Bd.* (1968) 266 Cal.App.2d 108, 110-112 [71 Cal.Rptr. 784];

---

[7]"We have considered the allegations of the Petitions for Reconsideration on file herein and the contents of the Referee's Report with respect thereto. Based on our review of the record, and for the reasons stated by the Referee, whose report we herewith adopt and incorporate.

"It Is ORDERED that said Petitions for Reconsideration be, and they hereby are, DENIED."

[8]"Any decision of the appeals board granting or denying a petition for reconsideration or affirming, rescinding, altering, or amending the original findings, order, decision, or award following reconsideration shall be made by the appeals board and not by a referee and shall be in writing, signed by a majority of the appeals board members assigned thereto, and shall state the evidence relied upon and specify in detail the reasons for the decision." (Lab. Code, § 5908.5.) Hereinafter, unless otherwise indicated, all section references are to the Labor Code.

*California Comp. & Fire Co.* v. *Workmen's Comp. App. Bd.* (1969) 34 Cal.Comp. Cases 231; see also *Krastins* v. *Workmen's Comp. App. Bd.* (1968) 33 Cal.Comp. Cases 751, 752.)

We suggested two bases for the requirements of detailed findings of fact and statements of reasons as set forth in *Evans*. First, the Legislature indicated in section 5908.5 its intention to facilitate judicial review of decisions of the appeals board by affording the reviewing court detailed information about the basis for the appeals board's action. Second, the Legislature evidenced its concern that the appeals board avoid careless or arbitrary action by careful consideration of the facts and by reasoned analysis in support of any decision it may reach. (*Evans* v. *Workmen's Comp. App. Bd., supra,* 68 Cal.2d 753, 755; see *Lundberg* v. *Workmen's Comp. App. Bd.* (1968) 69 Cal.2d 436, 440-441 [71 Cal.Rptr. 684, 445 P.2d 300]; *Granado* v. *Workmen's Comp. App. Bd.* (1968) 69 Cal.2d 399, 406 [71 Cal.Rptr. 678, 445 P.2d 294]; *California Motor Transport Co.* v. *Public Utilities Com.* (1963) 59 Cal.2d 270, 274-275 [28 Cal.Rptr. 868, 379 P.2d 324].)

Although these two reasons apply with great force to any decision rendered by the appeals board after reconsideration, they do not apply to an appeals board decision *denying* reconsideration. In *Evans*, having granted reconsideration, the appeals board reached its own decision without properly pursuing its authority under section 5908.5. In reviewing the appeals board's decision in that case, we lacked a detailed statement of the reasons and facts underlying the board's decision. In the absence of that recitation we could not adequately perform our responsibility of review under section 5952.

The appeals board in the present case, however, by adopting and incorporating the report of the referee, has provided the reviewing court with adequate guidance. The referee's report clearly indicates the basis of his decision. The appeals board has therefore fulfilled the first rationale of *Evans* by adopting and incorporating the referee's decision which clearly states the factual and rational basis of its order denying reconsideration.[9]

As to the second rationale of *Evans,* we must read section 5908.5 to-

---

[9]Of course, if the referee, indicating some deficiency in his original report, recommends reconsideration, or if the referee's report does not "state the evidence relied upon and specify in detail the reasons for the decision" (see Lab. Code, § 5908.5), the appeals board, and no other officer or person, should fulfill the obligation imposed by section 5908.5 to state the evidence relied upon and specify in detail the reasons for its decision to deny reconsideration.

gether with section 5909[10] of the Labor Code. Section 5909 permits the appeals board to deny a petition for reconsideration by simply not acting upon the petition for 30 days from the date of filing. The Legislature has thus provided that in denying a petition for reconsideration the appeals board need not detail its factual and rational basis for so doing. If we were to conclude that section 5908.5 required detailed findings and statements of reasons, the appeals board could simply by pocket denial dispose of cases under section 5909.[11] Hence, the appeals board in incorporating the referee's report substantially complied with the second rationale of *Evans* by indicating sufficient consideration of the petition under the strictures of sections 5908.5 and 5909.

We hold that if the appeals board denies a petition for reconsideration its order may incorporate and include within it the report of the referee, provided that the referee's report states the evidence relied upon and specifies in detail the reasons for the decision. (See Lab. Code, § 5908.5.)

3. *The decision of the appeals board and the report of the referee lack the support of substantial evidence.*

▮ In our appellate review of the decisions of the appeals board, which exercises a long-acknowledged administrative expertise, we have required that the record contain substantial evidentiary support for the appeals board's decisions. (Lab. Code, § 5952; see, e.g., *McAllister* v. *Workmen's Comp. App. Bd.* (1968) 69 Cal.2d 408, 419 [71 Cal.Rptr. 697, 445 P.2d 313]; *Zemke* v. *Workmen's Comp. App. Bd.* (1968) 68 Cal.2d 794, 796-797 [69 Cal.Rptr. 88, 441 P.2d 928]; *Jones* v. *Workmen's Comp. App. Bd., supra,* 68 Cal.2d 476, 478; *Argonaut Ins. Co.* v. *Industrial Acc. Com.* (1962) 57 Cal.2d 589, 593 [21 Cal.Rptr. 545, 371 P.2d 281];

---

[10]"A petition for reconsideration is deemed to have been denied by the appeals board unless it is acted upon within 30 days from the date of filing. The appeals board may, upon good cause being shown therefor, extend the time within which it may act upon such petition for not exceeding 30 days." (Lab. Code, § 5909.)

[11]It is true that upon first glance section 5908.5 apparently imposes the same requirements of detailed factual findings and statement of reasons upon the appeals board when it acts after reconsideration as when it denies a petition for reconsideration. But reading and construing sections 5909 and 5908.5 together we cannot believe the Legislature intended by section 5908.5 to require detailed findings and reasons upon a denial of reconsideration if the appeals board can avoid the requirement so easily under section 5909. In granting a petition for reconsideration, however, the appeals board should comply with section 5908.5 in order to apprise the parties and the referee as to the basis for reconsideration. We cannot find any provision analogous to section 5909 which applies to the granting of reconsideration; if the appeals board complies with section 5908.5, the parties will understand what new evidence or arguments they should present upon reconsideration. (See Lab. Code, §§ 5906, 5908.) If the appeals board grants reconsideration, and without taking further evidence, affirms, rescinds, or amends the original award (see Lab. Code, §§ 5906, 5907), *Evans* requires full compliance with section 5908.5.

▮

*Schaller* v. *Industrial Acc. Com.* (1938) 11 Cal.2d 46, 50 [77 P.2d 836].) But from time to time we have somewhat inconsistently mentioned, but generally not utilized, tests of judicial review which depart from the substantial evidence approach. (See, e.g., *Jones* v. *Workmen's Comp. App. Bd., supra,* 68 Cal.2d 476, 479 ("any evidence"); *Rogers Materials Co.* v. *Industrial Acc. Com.* (1965) 63 Cal.2d 717, 721 [48 Cal.Rptr. 129, 408 P.2d 737] ("any evidence");[12] *Fred Gledhill Chevrolet* v. *Industrial Acc. Com.* (1964) 62 Cal.2d 59, 61 [41 Cal.Rptr. 170, 396 P.2d 586] ("any substantial evidence");[13] *Douglas Aircraft, Inc.* v. *Industrial Acc. Com.* (1957) 47 Cal.2d 903, 905 [306 P.2d 425] ("any substantial evidence"; "any evidence");[14] *Drillon* v. *Industrial Acc. Com.* (1941) 17 Cal.2d 346, 350 [110 P.2d 64] ("entire lack of evidence").[15]) This lack of consistency has caused considerable confusion among the Courts of Appeal and the workmen's compensation bar. (Compare, e.g., *Peterson* v. *Workmen's Comp. App. Bd.* (1968) 266 Cal.App.2d 818, 822 [72 Cal.Rptr. 545] ("substantial evidence"; "any evidence");[16] *Baker* v. *Industrial Acc. Com.* (1966) 243 Cal.App.2d 380, 390 [52 Cal.Rptr. 276] ("any evidence";[17]

---

[12]*Jones* v. *Workmen's Comp. App. Bd.* derives solely from *Rogers Materials Co.* v. *Industrial Acc. Com.,* which in turn cites no authority for its use of the "any evidence" approach.

[13]*Fred Gledhill* misquoted *Argonaut Ins. Co., supra,* 57 Cal.2d 589, 593, in placing the word "any" before "substantial evidence." *Berry* v. *Workmen's Comp. App. Bd., supra,* 68 Cal.2d 786, 789-790, repeated the erroneous quotation, and *Smith* v. *Workmen's Comp. App. Bd.* (1969) 71 Cal.2d 588, 592 [78 Cal.Rptr. 718, 455 P.2d 822], relies on *Fred Gledhill* and *Jones.*

[14]*Douglas Aircraft, Inc.* v. *Industrial Acc. Com.* cites no authority for its use of the "any substantial evidence" test and derives its "any evidence" language directly and indirectly from *Ethel D. Co.* v. *Industrial Acc. Com.* (1934) 219 Cal. 699, 706 [28 P.2d 919]. *Ethel D.* in turn cites two cases which do not support this language and one case which derives from an unsupported use of this erroneous language in *Southern Pac. Co.* v. *Industrial Acc. Com.* (1918) 177 Cal. 378, 380-381 [170 P. 822]. See also *Mercer-Fraser Co.* v. *Industrial Acc. Com.* (1953) 40 Cal.2d 102, 114 [251 P.2d 955], which ultimately derives from the same unsupported language in *Southern Pacific.*

[15]*Drillon* cites cases which do not support its "entire lack of evidence" approach.

[16]*Peterson* derives its "any evidence" language from *Jones* v. *Workmen's Comp. App. Bd., supra,* 68 Cal.2d 476, 478-479, and *Rogers Materials Co.* v. *Industrial Acc. Com., supra,* 63 Cal.2d 717, 721; see fn. 12, *supra.*

[17]*Baker* cites *Limited Mut. Comp. Ins. Co.* v. *Industrial Acc. Com.* (1940) 37 Cal. App.2d 50, 53 [98 P.2d 827], and *State Comp. Ins. Fund* v. *Industrial Acc. Com.* (1959) 176 Cal.App.2d 10, 13-14 [1 Cal.Rptr. 73], for its "any evidence" approach. *Limited Mutual* cites *Head Drilling Co.* v. *Industrial Acc. Com.* (1918) 177 Cal. 194, 197 [170 P. 157], as its authority. *State Comp.* cites *Massachusetts Bonding & Ins. Co.* v. *Industrial Acc. Com.* (1939) 36 Cal.App.2d 96, 98 [96 P.2d 1009], which in turn derives from *Head Drilling.* The "any evidence" language in *Head Drilling* comes not from the text but from a misstatement of the text in headnote [2]. Substantially the same court that rendered *Head Drilling* also rendered *Pacific Coast Cas. Co.* v. *Pills-*

"any substantial evidence"[18]) with *Havel* v. *Industrial Acc. Com.* (1957) 154 Cal.App.2d 737, 742 [316 P.2d 680] ("substantial evidence").)

We must return to the very explicit language of section 5952 to determine the proper scope of judicial review of the evidence in workmen's compensation cases: "The review by the court shall not be extended further than to determine, based upon the entire record . . . whether . . . [t]he order, decision, or award was not supported by substantial evidence."[19] We must disapprove of any contradictory language in the above opinions and in the cases that generated and derive from them. (E.g., *Travelers Ins. Co.* v. *Workmen's Comp. App. Bd.* (1967) 68 Cal.2d 7, 15 [64 Cal.Rptr. 440, 434 P.2d 992].) In reviewing the evidence our legislative mandate and sole obligation under section 5952 is to review the entire record to determine whether the board's conclusion was supported by substantial evidence. (See *O'Keeffe* v *Smith, Hinchman & Grylls Associates, Inc.* (1965) 380 U.S. 359, 362 [13 L.Ed.2d 895, 897, 85 S.Ct. 1012], but cf. *Martin* v. *Alcoholic Beverage Control Appeals Board* (1959) 52 Cal.2d 238, 246 [340 P.2d].)

Petitioner contends that the referee lacked substantial evidence for his conclusion that the petitioner was not entitled to temporary compensation. Petitioner contends that he still suffers from a considerable handicap which renders him unable to return to his occupation as a bar stockkeeper

---

bury (1915) 171 Cal. 319, 321 [153 P. 24], which uses "any substantial evidence" language without citation of authority; yet the headnotes did not note this language. *Baker* also cites the unsupported language of *Rogers Materials Co.* v. *Industrial Acc. Com., supra,* 63 Cal.2d 717, 721, which is discussed in footnote 12, *supra.*

[18]For its "any substantial evidence" language *Baker* repeats the misquotation of *Argonaut Ins. Co.* v. *Industrial Acc. Com., supra,* 57 Cal.2d 589, 593, in *Fred Gledhill Chevrolet* v. *Industrial Acc. Com., supra,* 62 Cal.2d 59, 61; see footnote 13, *supra.*

[19]In tandem with section 5952, section 5953 provides that "The findings and conclusions of the appeals board on questions of fact are conclusive and final and are not subject to review. . . . [In reviewing the appeals board decision] the court shall enter judgment either affirming or annulling the order, decision, or award, or the court may remand the case for further proceedings before the appeals board." We must read section 5953 in conjunction with section 5952 so that "The findings and conclusions of the appeals board on questions of fact are conclusive and final" so long as, "based upon the entire record," they are "supported by substantial evidence." (See 2 Larson, Workmen's Compensation Law (1968) § 80.10, at pp. 318-319.) Of course, upon questions of law (see, e.g., *Rogers Materials Co.* v. *Industrial Acc. Com., supra,* 63 Cal.2d 717, 721) or in cases in which the employee is found dead or seriously injured without memory in the time and space limits of his employment (see, e.g., *F. W. Woolworth Co.* v. *Industrial Acc. Com.* (1941) 17 Cal.2d 634, 636-637 [111 P.2d 313]; 1 Larson, Workmen's Compensation Law (1968) § 10.32, at pp. 108-111), the reviewing court follows a somewhat different approach. (See *Lundberg* v. *Workmen's Comp. App. Bd., supra,* 69 Cal.2d 436, 439; *Granado* v. *Workmen's Comp. App. Bd., supra,* 69 Cal.2d 399, 404-406; see also Lab. Code, § 5952, subds. (a), (b), (c), and (e).)

and Du-All Saw operator. Having reviewed the entire record, we conclude that the referee's conclusion lacks the support of substantial evidence.

The referee himself summarized the evidence in such a way as to compel the conclusion that petitioner was entitled to temporary disability compensation. The referee established that petitioner still suffers from the temporary injuries incurred in the course of his employment; indeed, the referee granted compensation for further treatment of petitioner's condition. Thus the referee recognized that Dr. Dedinsky, the insurance carrier's physician who has treated petitioner throughout, released petitioner for work with a lifting limitation of 25 pounds; and that although the doctor has seen petitioner several times since the limited work release, the doctor has never removed the limitation. Since the referee stated that petitioner's occupation at the time of the injury was that of a Du-All Saw operator and bar stockkeeper, any discussion of subsequent unsuccessful attempts to find work as a cook becomes irrelevant.[20] The referee understood that petitioner's occupation as a Du-All Saw operator and bar stockkeeper sometimes required that petitioner lift stock weighing from 200 to 250 pounds. Even petitioner's work as a cook required lifting which petitioner could not perform adequately for him to remain employed. Having established all these facts, the referee illogically concluded that petitioner did not qualify for temporary disability compensation.

The referee's only support for his conclusion appears in his report and recommendation on the petition for reconsideration. After reviewing Dr. Dedinsky's reports and Dr. Messinger's report, the referee observed, "The general tenor of the medical reports, especially when considered in the light of other factors,[21] suggests that the doctor's cautions were more in the nature of prophylactic advice rather than rigid restrictions."[22]

---

[20]Petitioner's receipt of unemployment insurance benefits and wages for his temporary work as a cook would warrant a finding of only a partial wage loss, but these payments would not justify a denial of all temporary disability benefits. (Lab. Code, §§ 4654, 4657; see *California Comp. Ins. Co.* v. *Industrial Acc. Com.* (1954) 128 Cal.App.2d 797, 808-813 [276 P.2d 148, 277 P.2d 442]; cf. *Pacific Employers Ins. Co.* v. *Industrial Acc. Com.* (Stroer) (1959) 52 Cal.2d 417, 420-422 [340 P.2d 622]; *Hardware Mut. Cas. Co.* v. *Workmen's Comp. App. Bd.* (1967) 253 Cal.App.2d 62, 65-67 [61 Cal.Rptr. 205].) Of course, on remand the board will compute the wage losses attributable to the temporary partial disability. (Lab. Code, §§ 4654, 4657; see California Workmen's Compensation Practice (Cont. Ed. Bar 1963) § 16.17, at 499-500.) There is nothing inconsistent in the applicant's claiming workmen's compensation and receiving unemployment compensation after the board erroneously refused to give him further workmen's compensation. Clearly, the applicant had no other income and was confronted with living expenses while his claim was being processed and reviewed.

[21]Neither the referee's report nor the record discloses what "other factors" the referee vaguely mentioned in this sentence.

[22]The reviewing court must consider the entire record (Lab. Code, § 5952) and may not isolate only the evidence which supports the board's findings (see Netterville,

Dr. Dedinsky stated on April 8, 1969, "At this time, it is felt he could return to his former type of work, as a Do All operator not requiring heavy lifting." Dr. Messinger reported that petitioner on November 29, 1968, "still should be in a modified work category, trying to avoid squatting and kneeling wherever possible, as well as, trying to avoid contusing the right elbow." The referee could expect no more definitive statement than this that petitioner could not perform the lifting required in his occupation. (See 2 Larson, Workmen's Compensation Law (1968) § 80.32, at pp. 322-323.)

The referee himself summarized the medical evidence as follows: "Dr. Dedinsky released him, with a lifting limitation of 25 pounds"; or as follows: "In about February of 1968, Dr. Dedinsky gave him a return-to-work slip, with a lifting limitation." No substantial evidence can support the referee's rejection of the uncontradicted medical opinion in the record or his characterization of the "doctor's cautions" as "more in the nature of prophylactic advice rather than rigid restrictions."

The referee and appeals board "must accept as true the intended meaning of [evidence] both uncontradicted and unimpeached." (*McAllister* v. *Workmen's Comp. App. Bd., supra,* 69 Cal.2d 408, 413.) Although we have long permitted a referee to rely upon the clearly relevant judgment of a single physician in making his decision (*Smith* v. *Workmen's Comp. App. Bd., supra,* 71 Cal.2d 588, 592; *Jones* v. *Workmen's Comp. App. Bd., supra,* 68 Cal.2d 476, 479-480; *Standard Rectifier Corp.* v. *Workmen's Comp. App. Bd.* (1966) 65 Cal.2d 287, 292 [54 Cal.Rptr. 100, 419 P.2d 164]; *Allied Comp. Ins. Co.* v. *Industrial Acc. Com.* (1961) 57 Cal.2d 115, 122 [17 Cal.Rptr. 817, 367 P.2d 409]; *Liberty Mut. Ins. Co.* v. *Industrial Acc. Com.* (1948) 33 Cal.2d 89, 94 [199 P.2d 302]), the referee here relies upon no medical authority in concluding that petitioner is not disabled from performing the lifting required in his occupation. Both Dr. Messinger and Dr. Dedinsky, the only two physicians who have seen or treated pe-

---

*The Substantial Evidence Rule in California Administrative Law* (1956) 8 Stan. L.Rev. 563, 580-583) and thus disregard relevant evidence in the record. (See *Dowden* v. *Industrial Acc. Com.* (1963) 223 Cal.App.2d 124, 133-134 [35 Cal.Rptr. 541].) For example, neither the reviewing court nor the board may pick and choose among reports of the same doctor so as to ignore the report which, by reason of its date and discussion, is the most relevant to the claim. (See *Jones* v. *Workmen's Comp. App. Bd., supra,* 68 Cal.2d 476, 480.) We must reject the suggestion that we disregard Dr. Dedinsky's letter of April 8 which explains the weight limitation on the work release of February 15. We must not isolate and only consider the letter of February 15 completely out of context. (See fns. 2 and 3, *supra.*) Similarly, Dr. Dedinsky's release for work "as a Do All operator not requiring heavy lifting" cannot be construed as a release to return to applicant's former work in the face of the uncontradicted indication that his work requires heavy lifting.

titioner since his temporary disability payments ceased, have concluded that petitioner cannot perform work requiring lifting. Neither doctor has released petitioner from the lifting limitation. In essence, the referee's report confronts petitioner with the grisly choice of obeying the medical advice of his treating physician or risking further injury by following the medical views of the referee.[23]

We hold that the appeals board and the referee lacked substantial evidence in concluding that petitioner was not suffering from temporary disability which would entitle him to temporary disability compensation.

The decision of the Workmen's Compensation Appeals Board is annulled and the cause remanded to that board for proceedings consistent with the views expressed herein.

Traynor, C. J., Peters, J., Mosk, J., Burke, J., and Sullivan, J., concurred.

**McCOMB, J.**—I dissent. I would affirm the decision of the Workmen's Compensation Appeals Board.

---

[23]The referee disclosed his attitude toward the uncontradicted medical advice of Dr. Dedinsky, the insurance carrier's doctor, and Dr. Messinger, the doctor retained by petitioner's attorney, by observing, "He does not think he could go back to this type of work, because he cannot lift; however, he has not *tried* lifting." (Italics added.) The doctors have forbidden petitioner to lift anything heavier than 25 pounds, much less the 200- to 250-pound stock found at his former employment.