Opinion
HOPPER, J.
This is a proceeding to review decisions of the Workers’ Compensation Appeals Board (hereinafter Board) denying disability benefits to petitioner (hereinafter Keeton) for two separate claims.
Keeton (who was born in 1942 and was a deputy sheriff in Kern County) claims to have sustained two “specific injuries” to his left knee. The first occurred on January 29, 1971 (case No. 76 BA 19018, hereinafter 19018). The second incident occurred on October 20, 1971 (case No. 76 BA 19848, hereinafter 19848) and resulted in a torn medial meniscus in Keeton’s left knee. Surgery for the October injury took place in November 1971. In June 1975 a second surgery was performed, at which time the lateral meniscus cartilage was removed. In a third surgery in September 1976 a total knee joint arthoplasty was performed. Blue Cross coverage provided by the employer paid for the June 1975 surgery and subsequent surgery which Keeton underwent in September 1976, November 1977 and December 1977. In case No. 76 BA 19017 (hereinafter 19017) Keeton asserted a claim for a continuous injury from July 10, 1967, to date. Keeton filed three claims in May 1976, i.e., 19017, 19018 and 19848.
The Workers’ Compensation judge found as to both 19018 and 19848 that Keeton did sustain a compensable injury to his left leg arising out of and in the course of his employment respectively on January 29, 1971, and October 20, 1971, but that each and both of those claims were barred by the statute of limitations. As to 19017 the judge found that Keeton did not sustain a compensable injury arising out of and in the course of his employment from July 10, 1967, to date. Keeton did not appeal as to 19848 (the October 1971 injury).
*310 Case No. 19017
In 19017 the finding of the judge that Keeton did not sustain a compensable injury was based upon a sentence in the report of Dr. Jennings dated January 25, 1978. In that report Dr. Jennings stated, “It is my feeling that all of the surgeries after the first were a progression of the accident which required the first surgery.” (Italics added.) Keeton’s position was, and is, that the word “progression” implies continuous trauma. The judge felt that such a contention stretched interpretation beyond reason. The judge concluded in his report and recommendation on the petition for reconsideration that contrary to the allegation of Keeton that Dr. Masserman in his report does not mention continuous trauma. In his September 19, 1977, report Dr. Masserman states, “The permanent disability was the result of the initial injury of 1971 and the combined effects of the multiple subsequent injuries over the years since 1971.” (Italics added in the report of the workers’ compensation judge.) In the opinion of the judge, Keeton misinterpreted both Dr. Jennings and Dr. Masserman.
In reviewing a decision of the Board, this court must consider the entire record. The decision is only to be upheld if it is based on substantial evidence in the record taken as a whole. (Lab. Code, § 5952; LeVesque v. Workmen’s Comp. App. Bd. (1970) 1 Cal.3d 627, 635 [83 Cal.Rptr. 208, 463 P.2d 432]; American Smelting & Refining Co. v. Workers’ Comp. Appeals Bd. (1978) 79 CaI.App.3d 615, 622 [144 Cal.Rptr. 898].)
- As the court said in Hulbert. v. Workmen’s Comp. Appeals Bd. (1975) 47 Cal.App.3d 634, 638 [121 Cal.Rptr. 239]: “LeVesque [citation] specifically rejected earlier judicial declarations that an award of the board must be sustained, if supported by Any evidence’ [citation] or Any substantial evidence’ [citation]. Although such a rule may continue in other fields of our law, in workmen’s compensation cases a reviewing court is no longer mandated to inquire only ‘whether there is substantial evidence in favor of the respondent’; and then if such be found, ‘no matter how slight it may appear in comparison with the contradictory evidence,’ be bound to affirm the decision under review. [Citations.] Nor is Mr. Witkin’s terse section head condensation of the rule as to what ordinarily constitutes substantial evidence, i.e., ‘Slight Evidence of Respondent,’ while ‘Overwhelming Evidence of Appellant [is] Disregarded’ [citation], any longer apposite in such cases.”
*311 Factual determinations of the Board must be upheld if, based on the entire record, such findings are supported by substantial evidence. (Lamb v. Workmen’s Comp. Appeals Bd. (1974) 11 Cal.3d 274, 281 [113 Cal.Rptr. 162, 520 P.2d 978].)
Applying the above legal standards to 19017, we conclude that the statement of Dr. Jennings quoted above, when read in the context of the entire report and the other doctors’ reports, does not provide substantial evidence to support the Board’s decision.
First, the statement of Dr. Jennings is taken out of context. In the very next sentence of the January 1978 report Dr. Jennings states, “I feel that his problem was industrially related and as I stated above, at the time it was first denied by the industrial carrier, I felt that if he wanted to he could’ve successfully argued the point at that time.” This tends to indicate Dr. Jennings felt there was a “continuing trauma” or “cumulative injury.” Such an interpretation is particularly reasonable in light of Dr. Jennings’ report dated September 18, 1977. The pertinent parts of that report are set forth in the margin.[1]
Second, while the term “progression” may be ambiguous, its common meaning is “a continuous and connected series.” (The Merriam-Webster Diet. (1974) p. 555, col. II.)
Third, we believe that the judge misinterpreted the report of Dr. Masserman. A cumulative injury results from “repetitive mentally or physically traumatic activities extending over a period of time, the *312 combined effect of which causes any disability or need for medical treatment.” (Lab. Code, § 3208.1.) We believe that “multiple subsequent injuries” mentioned by Dr. Masserman meant essentially the same thing as cumulative injury. This interpretation is further strengthened by the supplemental report of Dr. Masserman dated July 19, 1977, which states: “[I]t would appear that Mr. Keeton’s left knee problems are largely, if not completely, due to the several injuries sustained and the exposure to other aggravating work activities from June 1971 to the present time.”
Furthermore, Keeton’s uncontradicted testimony was that over the years of his employment in the sheriff’s office he was involved in several physical encounters and scuffles which bothered and worsened his knee condition.
While we do not believe that the evidence relied upon by the Board is substantial evidence to support the Board’s decision that Keeton did not suffer a cumulative injury,[2] we cannot, as a matter of law, conclude that Keeton has met his burden of proof to show that there was a compensable cumulative injury. The question remains one of fact. However, we are unable to determine what conclusion the Board would have reached from the facts if the Jennings and Masserman reports had been interpreted in the manner we have done and as is set forth above. Weight and credibility is a matter for the trier of fact, not for this court. Under the circumstances, the decision in 19017 should be annulled and remanded for further determination by the Board in the light of our observations herein and subject to such additional evidence, if any, furnished to the Board.
Case No. 19018
In 19018 Keeton contends that the January 1971 injury should not be barred by the statute of limitations because respondent employer failed to notify Keeton of his rights with regard to workers’ compensation benefits for the January 1971 injury and, thus, Keeton concludes that his claim was filed within one year of the last furnishing of benefits. Respondent State Compensation Insurance Fund (hereinafter Fund) contends that Keeton was clearly aware that his employer was disclaiming any and all liability for the January 29, 1971, injury.
*313 Labor Code section 5405 limits the period of time in which a claim for specific injuries may be filed. This section provides in part: “The period within which may be commenced proceedings for the collection of benefits ... is one year from: (a) the date of injury; or (b) the expiration of any period covered by payment . . . ; or (c) the date of last furnishing of any benefits. . . .” The time starts to run from whichever of the three dates gives the employee the longest period.
The record is not clear on exactly what basis the judge found that the statute of limitations had run. However, we have carefully read the entire record and conclude that the Fund has met its burden of proof on the affirmative defense of the statute of limitations and there is substantial evidence in the record as a whole to support the factual determination of the Board.
In November 1971 the Fund notified Keeton that: “Your claim for benefits under California Workmen’s Compensation Law was submitted to us by the insurance carrier for the employer shown above. [H] After careful consideration of all available information, we have concluded that we cannot, on behalf of the employer shown above, accept any responsibility for your injury. This decision was made because your medical history does not indicate your need for surgery is due to any industrial injury, . . .”
That November 19, 1971, notice specifically referred to the October 20, 1971, injury and was so designated at the top of the document. While the notice did not discuss or refer to the January 29, 1971, injury and may not be a proper disclaimer, when read in conjunction with the summary of evidence and the medical reports of Dr. Jennings, it clearly establishes that Keeton was well aware of the compensable nature of the January 1971 injury.
For example, a report from Dr. Jennings dated January 25, 1978, stated in part: “My records and my own recollection is that he [Keeton] described two injuries on the job, the first being some 10 months before he finally had his first surgery. I asked him at the time if he was going to contest it and he stated no, because he had good private insurance and we both felt that he would regain a normal knee after removal of the torn medial meniscus.”
In addition, the summary of evidence made by the judge as to Keeton’s testimony states in part, after referring to the first surgery: “Before this *314 surgery he communicated with State Compensation Insurance Fund and after communicating with them he received a letter from them denying the claims'.” (Italics added by the judge in his report on petition for reconsideration.)
The Board could reasonably conclude from all of the evidence that Keeton had actual knowledge that he had a compensable injury and was required to file a timely claim. We cannot hold, as a matter of law, to the contrary.
Under all of the circumstances, Reynolds v. Workmen’s Comp. Appeals Bd. (1974) 12 Cal.3d 726 [117 Cal.Rptr. 79, 527 P.2d 631] and its progeny do not apply. The Fund is not estopped from asserting the statute of limitations as a defense. This is not a case of an injured employee ignorant of the procedures. Keeton had actual knowledge and he simply did not promptly pursue his remedies.
Mihesuah v. Workmen’s Comp. Appeals Bd. (1972) 29 Cal.App.3d 337 [105 Cal.Rptr. 561] is distinguishable. There was no actual knowledge in Mihesuah (see also Kaiser Foundation Hospitals v. Workers’ Comp. Appeals Bd. (Webb) (1977) 19 Cal.3d 329 [137 Cal.Rptr. 878, 562 P.2d 1037]).
The order in case No. 76 BA 19017 is annulled and remanded for further proceedings in accordance with this opinion.
The order in case No. 76 BA 19018 denying reconsideration is affirmed.
Franson, Acting P. J., and Zenovich, J., concurred.

“I have taken care of Mr. Keeton since 1971. I operated on him in that year for a torn medial meniscus which was removed. In my operative note I mentioned that the articular cartilage of the tibia, femur and patelld were completely normal at that time. He felt at that time the problem was caused from a work-related injury but State Compensation Insurance Company denied the claim. Because it was a clearcut meniscectomy, with a normal knee otherwise, he did not choose to contest the denial at that time. He stated in a number of forms that he filled out in the next two years however, that he had had repeated injuries to his knee while working. The sum total of these injuries (including his initial injury) resulted in his considerable degenerative arthrosis of the medical knee compartment was noted. A year and three months later, he had a total knee replacement (with the exception of the patello-femoral joint), because of progressive degenerative arthrosis. As I stated above, during this four year period (between the medial meniscectomy and the total knee replacement), he told me both vocally and in writing, that he had had a number of injuries to his knee while on the job. I feel that his occupation as a deputy sheri AT has definitely contributed to the continued degeneration of his knee joint. There was also a very definite question prior to his first surgery in 1971, as to whether his initial injury was work-related. He certainly felt it was and as I stated above, he did not contest it, only because he thought that the problem would be a ‘one time thing’ and that he would be made well by his first surgery.”

The report of Dr. Williams supporting the Board’s decision is conclusory and is not substantial evidence.